No. 25,229.

ENNIS-BAYNARD PETROLEUM COMPANY, *Appellant,* v. THE PLAIN-VILLE MILL AND ELEVATOR COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. PAYMENT—*Remittance by Mail—Evidence.* Where an issue of fact was raised as to whether a letter transmitting a check in payment for a shipment of fuel oil was received by the consigning vendor, there was testimony that such a letter had been dictated and such a check executed by the vendee; that a bookkeeping entry had been made by vendee debiting the vendor with the amount of the check; that the letter and check had been handled for mailing by the defendant vendee according to the usual course of its business correspondence by mail, although no one connected with the firm had an independent recollection of the letter being mailed; that the envelope containing the letter and check was addressed to the vendor at Chicago, Ill., but without a street address; that the envelope had on it the sender's return address, and that the letter had not been returned to the

VOL. 118.    JANUARY TERM, 1925.    203

Ennis-Baynard Petroleum Co. v. Plainville Mill and Elevator Co.

sender by the postal authorities as undelivered: *Held,* that as against the addressee's denial of receipt of the letter, based solely on the fact that the letter was not found in its files, the question whether such letter and check were received by the addressee was properly submitted to the jury.

2. EVIDENCE—*Presumption—Mailing and Delivery of Mail.* Where plaintiff and defendant conducted an extensive correspondence through the United States mail, and a score or more of defendant's letters written within a few weeks' time and addressed to plaintiff at Chicago, Ill., without a street address, were admittedly and promptly received by plaintiff, the want of such street address on one letter so mailed to plaintiff did not destroy the presumption of fact that such letter was also received, although its receipt was denied by plaintiff.

3. TRIAL—*Instructions.* Errors assigned on the trial court's refusal to give certain instructions examined and not sustained.

4. SAME—*Compromise Verdict.* Error urged on the ground that the verdict was a compromise examined and not sustained; and *held,* that the fact that the verdict was for a less amount than part of the evidence for appellee might have supported gives appellant no just ground for complaint.

Appeal from Rooks district court; CHARLES I. SPARKS, judge. Opinion filed April 11, 1925. Affirmed.

*J. Earl Farrish, J. B. Larimer, W. Glenn Hamilton,* all of Topeka, *Carl L. V. Exselsen,* and *Ernest Peacock,* both of Chicago, Ill., for the appellant.

*W. L. Sayers, J. S. Parker,* both of Hill City, and *O. O. Osborn,* of Stockton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover an alleged balance due on the purchase price of six cars of fuel oil, delivered pursuant to a contract wherein plaintiff had agreed to furnish defendant with a year's supply of four carloads per month. A cross action by defendant for damages for plaintiff's failure to perform its contract was also involved.

Defendant prevailed in its defense to plaintiff's action and also in its cross action for damages.

Plaintiff assigns various errors, which will be noted:

As a justification for terminating its contract, plaintiff contended that defendant had failed to send it a remittance for a shipment of oil received on October 22. By the terms of the contract, payment had to be forwarded in thirty days after receipt of shipment. The jury specially found that such remittance had been mailed on November 19, and had been received by plaintiff. It is now contended that such finding lacked support in the evidence. But the

record shows that defendant wrote two letters to plaintiff on that date, in one of which a check for the requisite sum was inclosed; that both letters were mailed in the usual course of business, and plaintiff admits having received one of these letters, but not the other, which contained the remittance check.

Plaintiff based its denial of the receipt of the letter containing the remittance upon the mere fact that such letter was not found in its files. The jury was justified in attaching no significance to that fact, because another letter of November 15 was also missing from the files, and its receipt was denied by the same witness and for the same reason, yet that letter contained a claim for credit in defendant's behalf, of which plaintiff could not possibly have been aware otherwise than by receipt of such letter, and which in conformity with such letter had been allowed and entered as a credit in defendant's favor on the books of the plaintiff company.

But the sufficiency of the evidence to show the mailing of the letter of November 19 containing the check is challenged, since neither the president of the defendant company who dictated the letter transmitting the check, nor the bookkeeper in charge of its files and accounts, nor the stenographer who usually carried the defendant's letters to the post office, had any independent recollection of this specific incident. A carbon copy of the letter of transmittal was introduced, and defendant's record of accounts of debits and credits with plaintiff was introduced, showing a debit entry for the amount of the check in its serial order between other debit items, and apparently entered at its ostensible date, November 19. The bookkeeper and the president both testified that the letter containing the check was handled as the defendant's mail was usually handled; that is, it was put "in the general bunch of mail ready to go to the post office."

The president testified:

"Q. That is, as far as you know, it was put in a bunch of mail that was in your office? A. It is the custom in the office to make up the bunch of mail and put it into a box which is kept there for that purpose, and our stenographer usually takes the mail to the post office. . . .

"Q. You couldn't swear absolutely that this letter was mailed, put in the United States post office or some depository for the United States post office? A. I would not say it was not mailed. I might have mailed it myself, but it has been so long ago I couldn't say positively who did mail it."

It was also shown that on the envelopes used by defendant in all its business correspondence were return instructions, viz.: "Return

in five days to the Plainville Mill & Elevator Company, Plainville, Kansas," and that the envelope bearing the letter of transmittal and the check of November 19 contained the same recital, and the letter and check were never so returned.

There is a presumption of fact that a letter which has been duly mailed has been received by the addressee. Of course the fact of affixing postage and mailing must be proved, but those facts may be proved as any controverted issue is proved, and this would permit proof by circumstantial evidence as well as any other evidence; and when the defendant's usual course of mailing its correspondence was shown and when the letter of transmittal with the check inclosed was shown to have been thus handled in the usual course of business, the affixing of adequate postage was implied (*Estes Mills Co. v. Stewart A. Shannon Co.*, 81 Pa. Sup. Ct. 536), and there was sufficient evidence to justify a jury's finding that the letter had been received in due course of mail. (*Sanders v. Bank Savings Life Ins. Co.*, ante, p. 120, 233 Pac. 1017.)

In 1 Wigmore on Evidence, 2d ed., 329-331, it is said:

"The fixed methods and systematic operation of the government's postal service have been long conceded to be evidence of the due delivery to the addressee of mail matter placed for that purpose in the custody of the authorities. . . .

"The habit of a private person or commercial house, doing systematically a similar service, is equally relevant. . . .

"The same application of the principle would admit a private person's usual course of business to evidence any act of delivery or transmission, such as the sending of a notice, or the placing of letters in the mail box; the only differences are, first, that the fact of the governmental system will be judicially noticed without further evidence (*post*, § 2575); and secondly, that the course of business of an individual may under the circumstances not appear sufficiently fixed to be of probative value. A consequence of the combination of these two applications of the principle is that, upon proper evidence of the habit of an individual commercial house as to addressing and mailing, the mere execution of a letter in the usual course of business may be evidence of its subsequent receipt by the addressee." (See, also, *Prudential Trust Co. v. Hayes*, 247 Mass. 311; *Com'l Trust Co. v. N. E. Macaroni Mfg. Co.*, 247 Mass. 366.)

A minor incidental point in this connection is suggested: It was not shown that the plaintiff's street address was written on the envelope. Cases there are which hold that where a letter was addressed to a person or firm in a large city with no given street address there is no presumption that the letter was received by the addressee. (*Fleming v. Evans*, 9 Kan. App. 858, 61 Pac. 503;

206 SUPREME COURT OF KANSAS.

Ennis-Baynard Petroleum Co. v. Plainville Mill and Elevator Co.

*Chicago, R. I. & P. Ry. Co. v. Chickasha Nat. Bank,* 98 C. C. A. 535, 174 Fed. 935; *Trauts Realty Corp. v. Casualty Co. of America,* 166 N. Y. Supp. 807.) That *Fleming v. Evans,* supra, cannot be regarded as authority on this point will be seen by an analysis of *Evans v. Fleming,* 62 Kan. 811, 64 Pac. 591, although the latter decision does not squarely disapprove the doctrine of the defunct court of appeals. But it seems that where the addressee is a well-known business firm in a large city, or a public official, the want of a street address on a letter otherwise properly addressed, stamped and mailed, does not overcome the presumption of delivery. (*Covell v. Western Union,* 164 Mo. App. 630; *Town of Barnet v. Town of Norton,* 90 Vt. 544.) While the record does not show that the plaintiff was a well-known business firm in Chicago, it does clearly appear that all the negotiations leading up to the contract were conducted by correspondence, and much of the extensive correspondence of the parties subsequent to the making of the contract as well, and in a score or more of these letters sent by defendant, and admittedly received by plaintiff in due course of mail, no street address was given. Under such a showing the court holds that there was a presumption of delivery, and the contravening fact that plaintiff denied the receipt of the letter, basing such denial on the mere absence of such letter from its files, was not of such potency as to bar the question of delivery from being submitted to the jury.

It is argued by defendant appellee that the evidence tended to show a course of dealing whereby a strict compliance with the contract provision for payment in thirty days was waived, and *Capper v. Paper Co.,* 86 Kan. 355, 121 Pac. 519, and other good authority is cited to support this argument; and appellee also shows rather pointedly that appellant really canceled the contract because of unanticipated advances in the price of fuel oil, and not because of any technical breach of appellee's duty to pay promptly in thirty days. A further argument is made on defendant appellee's behalf that there was really nothing due plaintiff on November 19, because of a considerable aggregate of underallowances for freight charges paid by defendant on plaintiff's behalf, and also because of a claim for damages for delay in shipments which had already accrued at the time of the alleged default on which plaintiff based its alleged right to cancel the contract. But while noting this line of argument on which the judgment might possibly be upheld, it seems altogether sufficient to rest this phase of the case on the sufficiency and

competency of the evidence to present a fair jury question as to the delivery of the remittance check of November 19.

Error is also assigned on the trial court's refusal to instruct the jury that the evidence was insufficient to prove delivery of the letter of transmittal and the accompanying check, but this point is disposed of in what has been said above.

Fault is also found because the trial court did not explain to the jury the effect of a clause in the contract covering the contingency of strikes, government embargo orders, and the like. The clause read:

"All orders, contracts and agreements accepted contingent upon strikes, accidents, delays by carriers or other causes beyond our control. Also subject to any tax, rules, regulations or embargo orders imposed by the U. S. government."

Plaintiff did plead that "any delays in shipments . . . were not due to any fault or neglect of said plaintiff, but were due to causes entirely beyond the control of plaintiff"; but defendant counters with the point that there was no evidence introduced to support this defense, and a careful perusal of the abstracts constrains us to hold that the point is well taken.

Another error urged by plaintiff is that the verdict was manifestly a compromise and contrary to the evidence, since the jury only allowed damages for the breach of the contract to furnish defendant's requisite supply of fuel oil for about four months, until March 1, 1920, when, if there was a breach at all, it was on the contract for the whole year's supply, until September 1, 1920, and defendant's evidence was to that effect. However, the evidence as to defendant's damages up to March 1, 1920, was clear, definite and conclusive. On March 1, 1920, defendant changed its engine, and used different kinds of fuel oil and experimented with various oil mixtures, which so complicated the proof and extent of defendant's damages that the jury simply disallowed all damages after March 1. Conceivably this might have given appellee a basis for complaint, but not appellant.

A painstaking study of the abstract and briefs discloses no plain, palpable error which would permit this court to disturb the judgment.

The judgment is affirmed.