No. 31,102.

THE STATE OF KANSAS, ex rel. MARC G. BOSS, as County Attorney of Cherokee County, *Plaintiff,* v. THE STATE HIGHWAY COMMISSION, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHEROKEE, THE CITY OF GALENA, et al., *Defendants.*

(22 P. 2d 969.)

Opinion filed June 10, 1933.

*C. E. Shouse,* county attorney, for the plaintiff.

*Wint Smith,* assistant attorney-general, *Arthur J. Mellott,* of Kansas City, and *Forrest D. Smythe,* of Baxter Springs, for the defendant The State Highway Commission; *A. L. Majors,* assistant county attorney, for the defendant Board of County Commissioners of Cherokee county; *A. D. Schreiner,* city attorney, for the city of Galena and other defendants.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus. The parties, the city of Galena, Cherokee county, and the state highway commission, seek a declaratory judgment as to their respective obligations concerning the payment of warrants issued by Cherokee county for the improvement of a road or highway through the city, with appropriate orders relating thereto.

The facts are stipulated. The city of Galena is a city of the second class, situated in Cherokee county on the east borderline of the state.

On June 21, 1921, the city of Galena, by its proper officials, acting, as it presumed, under authority of chapter 219 of the Laws of 1921 (R. S. 68-506), amending sections 15 and 54 of chapter 264 of the Laws of 1917, presented to the board of county commissioners of Cherokee county "a petition and application for road improvement." This recited, among other things, that a part of the road and county highway was then being improved in Cherokee county whereon federal aid was being expended, which road terminates at the corporate limits of the city of Galena; that the road passes through the city to the state line, which is the corporate limits of the city, and that a concrete road and highway has been constructed by the authorities in the state of Missouri which terminates at the state line and corporate limits of the city and will connect up with the road prayed for and proposed and which will also connect up and be an extension of the public highway, now being improved, so as to make a continuous highway; that it will be a great public utility, and that the houses situated on the road proposed to be improved are, on the average, more than two hundred feet apart. The proposed highway, described in detail, began at the west limits of the city at the end of the improvement then being made by the county on a county highway, thence east to Main street, thence north on Main street to the northwest corner of block 5 of the original plat of Galena, thence along a regularly laid out road north about 860 feet, northeasterly about 4,565 feet and southeasterly about 2,087 feet to the point where it intersects with the improved concrete road constructed in Missouri. The petition prayed that the board of county commissioners declare the city of Galena to be "a road benefit district" for the purpose of improving such road; that the same be declared and designated as a part of the road system of

Cherokee county; that its improvement be declared a public utility, and that necessary orders for such improvement be made; that the payments and the assessments therefor be made in ten annual assessments, and that the board of county commissioners take such steps as may be necessary to secure state or federal aid for the improvement. There was also passed by the proper officials of the city of Galena and filed with this petition a resolution by which the city agreed to maintain and keep in repair, at its own expense, the highway after the improvements prayed for were made.

On June 3, 1921, the petition and resolution of the city of Galena were presented to the county attorney of Cherokee county, who examined the same and reported to the board of county commissioners that he found all of the proceedings to have been conducted in accordance with chapter 265 of the Laws of 1917 and amendments thereto and other laws of the state, and that the petition and other proceedings were sufficient in form to justify the improvements prayed for and the issue of the bonds proposed. On the same date the board of county commissioners, having considered the petition and application and resolution of the city of Galena, found that the improvements as prayed for are a public utility; that the petition is presented by the city council of Galena, that it designates the road to be improved sufficiently by name and terminal points, that it definitely describes the land within the proposed benefit district, also the type of improvement, the width of the roadway, the number of annual assessments, and in all respects to be in compliance with the provisions of chapter 265 of the Laws of 1917 and amendments thereto, and it was resolved that the road described in the petition be improved as prayed for; that the county engineer make a survey of the proposed road, with profile and maps and an estimated cost of the improvement; that the board of county commissioners cause the expense for the improvement of the road to be met from time to time with warrants, and after the completion of the improvements the cost be apportioned as follows: "(a) If any portion of the cost of said improvements is provided for by the receipt of federal aid or donations from other sources, the same shall be applied to the cost of the improvements to the extent for which the same are given." (b) That the remaining cost be apportioned to the county and city, fifty per cent to each. This resolution was published for three weeks beginning July 9, 1921.

On July 15 the board of county commissioners presented to the

state highway commission an application for federal aid, in which it was stated that the improvements would be carried out under the direction of the state highway commission, as required by the federal act, "subject to the inspection and approval of the secretary of agriculture and in accordance with the provisions of the federal-aid road act, chapter 264 of the Session Laws of 1917, amendments thereto, and the rules and regulations adopted by the secretary of agriculture."

On July 30, 1921, the board of county commissioners, having duly published their former resolution more than ten days previous, took up the petition for final consideration and again made all the findings contained in the resolution of June 3 and ordered the road to be improved as prayed for, and to meet the expense from time to time by warrants from a special fund created for that purpose, and after the completion of the improvements to apportion the costs and to issue bonds as provided by section 9 of chapter 265 of the Laws of 1917 and amendments thereto, in payment of the outstanding warrants; that in addition thereto the county would construct necessary bridges the cost of which shall exceed $2,000 or that have a span of twenty feet or more.

On August 24, 1921, the final resolution of the board of county commissioners was passed in accordance with a decision of the state highway commission recommending federal aid to an amount not exceeding fifty per cent of the entire cost and not to exceed $15,000 per mile.

On August 25, 1921, the final resolution of the state highway commission for the improvement of the road as a federal-aid road was adopted.

We may say here that the cost of improving any part of the proposed road from the west line of the city to Main street, and on Main street, is not involved in the controversy in this case. Main street, being paved at the time these resolutions were adopted, was not to be improved, and whether that part of the proposed road west of Main street was improved does not appear from the proceedings before us.

About June 28, 1922, the board of county commissioners passed a resolution altering the route of the proposed road from Main street to the east line of the city, where it connected with the concrete highway established in Missouri. This alteration became necessary to avoid dangerous railroad crossings, the federal govern-

ment having made it a condition to the furnishing of federal aid. A new survey, with plats, etc., was ordered.

Nothing further appears to have been done in the matter until after the 1925 session of the legislature. On April 21, 1925, the city adopted a resolution reciting the previous history of the matter and the enactment of chapter 211 of the Laws of 1925, and stating its willingness to conform thereto, and by which the city agreed to change the route of the highway as required by the federal authorities, "and does hereby agree to acquire, establish, lay out and provide for a street, roadway, or thoroughfare over and along the route designated or approved by the federal-aid bureau." The resolution directed the city engineer forthwith to make surveys, with reports, plats, maps, plans and specifications and estimates as may be required, and the city attorney was required forthwith to take the legal steps for obtaining a right of way for the purpose of opening, establishing and extending the streets over and along the route to be followed by such highway. The city agreed to join with the board of county commissioners for the construction of the remaining portion of the highway in accordance with the provisions of chapter 211 of the Laws of 1925.

On April 25, 1925, a committee representing the city of Galena presented to the board of county commissioners a contract with the St. Louis-San Francisco Railway Company, the Missouri, Kansas & Texas Railway Company, and the Joplin-Galena good-roads association, and also presented the last-mentioned resolution to the city, with the request that the board of county commissioners adopt a resolution whereby the board, in conjunction with the city, should complete the improvement on the highway; but the board, after a hearing, deferred determination of the matter. On September 14, 1925, the board of county commissioners accepted the proposal of the Joplin-Galena good-roads committee and the St. Louis-San Francisco Railway Company and agreed to go ahead with the work. Among the agreements so filed with the board of county commissioners was that of the Joplin good-roads committee by which the committee agreed to pay to the county "$5,000 to assist the county in paying their share of the costs of the whole project as provided by law and described in the petition and shown by plans prepared by the county." On the same day there was signed a "memorandum agreement" between the city and county by which the city agreed to the change in the route of the highway and agreed to ac-

quire, establish, lay out and provide for a street, roadway, or thoroughfare over and along the route designated· by the federal-aid bureau, and that the city would furnish the right of way and fill up any caves or undermined ground beneath the proposed route and make it safe for the laying of the concrete slab, if the county would consider going ahead with the work.

Pursuant to the memorandum agreement the city acquired the right of way and made it safe for the laying ·of a concrete slab. Plans and specifications and estimates were presented to and approved by the state highway commission, which presented them to the federal bureau of public roads, which approved them on April 6, 1926.

On April 12, 1926, the board of county commissioners directed the clerk to advertise for bids. The requisite notice was published and the contract was let about June 4. The board of county commissioners adopted an appropriate resolution for the financing of the project, which was completed about December 16, 1928. Distribution of the costs of the project was not made until in November, 1930, at which time the board of county commissioners apportioned the costs. It seems to be conceded that this apportionment was inaccurate, because the cost of constructing ,a viaduct was mingled with that of the construction of the highway, and perhaps for other reasons. For our present purposes it is sufficient to say that the total cost of the improvement (exclusive of the right of way, which the city procured) was $74,064.65. Federal aid was received and applied in the sum of $19,256.63. This left $54,808.02 to be paid for by the county and the city, which, on the fifty per cent basis, would require each to pay $27,404.01. The Joplin-Galena good-roads committee paid $5,000 to the board of county commissioners, · which it applied on its share of the expense, which left unpaid $22,-404.01. It then issued its bonds in the sum of $21,200, leaving warrants unpaid in the amount of $1,204.01. In 1927 the city of Galena levied a tax upon the taxable property of the city to pay upon this project. These taxes, amounting to $3,711.87, were collected by the county, and so far retained by it. ·

The relator and the state highway commission contend that under chapter 211, Laws of 1925, it was and is the duty of the city of Galena to bear its portion of the cost of constructing the highway as provided in the resolutions and agreements hereinbefore mentioned, the same to be collected by a tax levied upon the· taxable

property within the city, the mayor and council being authorized, should they deem it necessary, to issue bonds of the city to pay the cost thereof; that not having collected such costs by a levy of a tax the city was obligated to issue its bonds bearing interest at not to exceed six per cent, payable in ten annual installments, as provided by chapter 211 of the Laws of 1925; that such bonds not having been issued, a peremptory writ of mandamus should now be issued requiring the issuance of such bonds.

The relator and the board of county commissioners of Cherokee county contend that under chapter 225 of the Laws of 1929 it is the legal duty of the state highway commission to utilize certain of its funds to pay the principal sum of outstanding warrants issued by the county for the improvement of the highway, but the state highway commission contends it has no duty to perform in connection with the payment for the particular project.

The relator and the city of Galena contend that under chapter 225 of the Laws of 1929, as amended by chapter 247 of the Laws of 1931, it is the legal duty of the state highway commission to apply certain of its funds to the payment of installments, including principal and interest, of the tax assessed on the property in the city of Galena, claiming that the projects constituted a benefit district, as referred to in these statutes; that reimbursement should be made of the benefit-district tax paid to the taxpayers who paid the installment; that the state highway commission must pay to the county of Cherokee the portion of costs chargeable to the lands and improvements in the city of Galena, including interest, on the theory that the city constitutes a benefit district as defined by these statutes. The state highway commission denies that the city constitutes or is a benefit district referred to in these statutes, denies it has any legal duty or authority to make such disbursement or to pay any bonds that may have been issued, or to pay any installments of principal or interest due or to become due, on any bonds issued by the city of Galena or the county of Cherokee.

The principal question for our determination in this proceeding is whether it is the duty, as contended for by the city of Galena and Cherokee county, of the state highway commission under existing statutes to pay the costs, or any part thereof, of the construction of the improvement made. If that question should be determined in the affirmative, then there are subsidiary questions as to how those payments should be handled. If the question should be an-

swered in the negative, there are questions as between the city of Galena and the county of Cherokee to be determined.

In determining the principal question to be decided it will be necessary to examine certain of our statutes, with amendments thereto, respecting the construction of improved roads and highways. We may begin with the legislative session of 1917, when two statutes were enacted (Laws of 1917, ch. 264 and ch. 265) bearing on the matter, since both of these chapters, and later ones amending them, are referred to in the proceedings had for the construction of the improvement in question. Chapter 264 revised or repealed many previously existing statutes of the state relating to roads and highways, and in addition thereto gave the consent of the legislature to the provisions and requirements of an act of congress, approved July 11, 1916, entitled, "An Act to provide that the United States shall aid the states in the construction of rural post roads, and for other purposes," to be administered under the secretary of agriculture. It created a state highway commission and authorized it to enter into contracts and agreements and to coöperate with the secretary of agriculture, and to receive and distribute federal aid for the construction or improvement of highways within the state. Section 15 of the act provided that the county engineers and boards of county commissioners should classify and designate the roads in their respective counties according to their relative importance as "county roads" and "township roads." It contained the provision that when a main-traveled highway is located partly within and partly without a city and connects a county road with the city, by the consent of the mayor and council or city commissioners the board of county commissioners might designate such highway as a part of the county road system and improve and maintain it as such, but that the city might aid in such construction and maintenance. By section 54 it was provided that the act should not apply to the construction and maintenance of streets and highways within the corporate limits of cities, but should apply to all other roads and highways in the state. These sections (Laws of 1917, ch. 264, §§ 15, 54) were specifically amended by chapter 219 of the Laws of 1921. The amendment to section 15 added to the section originally enacted the following:

"*Provided, however,* That when a road is being or has been improved by the county where state or federal aid has been extended in the improvement of such road, and such road terminates at the city limits, and where such road

has been constructed with federal aid, which terminates at the state line and the state line is the corporate limits of a city, the state highway commission is hereby authorized and empowered to extend federal aid and the board of county commissioners on application of the city council or commissioners shall declare such street or streets as form a connection between said roads a benefit district and extend state aid on that part of the road lying within the city limits, in the same way and in the same manner as they extended aid in the improvement of the road outside of the city limits: *Provided, however,* Aid shall not be applied on roads within the city limits only as far as the houses are located more than 200 feet apart on the average and the improvement of such road is the extension of a highway that is being improved or has been improved in the county, outside of the city limits: *And provided further,* That the state highway commission is hereby authorized and empowered to coöperate and deal with the city council, commissioners or other interested parties that provide funds to take care of the local part of the cost of the improvement of the highway lying within the city limits, and such improvement shall be under the supervision and direction of the state highway commission, as provided for in the improvement of other roads of like nature in the county."

This section, as amended, became section 68-506 of the Revised Statutes of Kansas for 1923. Section 54 was amended so as to read:

"That the provisions of this act shall not apply to the construction and maintenance of streets and highways within the corporate limits of cities, but shall apply to all other roads and highways in this state, except as provided in section 1 of this act." (R. S. 68-547.)

The steps taken prior to 1925 by the city of Galena and Cherokee county for the improvement in question were taken under this statute and chapter 265 of the Laws of 1917, which will be later discussed.

The legislature in 1925 passed an act (Laws 1925, ch. 211) amending and supplementing section 15 of chapter 264 of the Laws of 1917, as amended by section 1 of chapter 219 of the Laws of 1921, the first section of which reënacts the former statute, with some verbal changes not affecting its meaning. By section 2 the governing body of the city declared a benefit district, under the provisions of the act, was authorized to bear its proportion of the cost of constructing the highway, the same to be collected by taxes levied upon all the taxable property within the city, and when deemed necessary the mayor and council were authorized to issue bonds of the city to pay the cost thereof and to levy taxes upon the taxable property of the city for the purpose of meeting the interest and principal on the bonds. By section 3 it is provided that where a city had previously begun proceedings by resolution, ordinance, or otherwise, under

chapter 264 of the Laws of 1917, as amended by chapter 219 of the Laws of 1921, and a resolution had been adopted by the county commissioners declaring the city a benefit district and the road through the city to be a public utility, the proceedings should not, by the passage of the act, be invalidated or set aside, but the actions taken shall be and are ratified, confirmed and made valid, and it was made the duty of the board of county commissioners, in conjunction with the governing body of the city, subject to the approval of the state highway commission, to proceed with the work; and if it became necessary to leave the route proposed in order to eliminate steam or electric grade crossings or other dangerous places to conform to the requirements of the department of agriculture or federal public-aid bureau to obtain federal aid, such route might be changed, and the right of way for that purpose, if it could not be obtained by donation or purchase, the city was authorized to acquire by condemnation proceedings. By section 4 it was provided that upon the completion of these improvements the county commissioners should apportion the costs by first applying federal or state aid or donations received, and the remainder of the cost should be apportioned fifty per cent each to the county and the city; the bonds issued or taxes levied to be in addition to all other issues authorized by law. The roads, after they were completed, were to be kept in repair by the city.

Since chapter 265 of the Laws of 1917 is frequently referred to in the proceedings for the making of the improvements, the costs of which are in controversy here, it will be necessary to consider that act. It amended several sections of the General Statutes of 1915, originally enacted in 1909 (Laws 1909, ch. 201), some of which were amended in 1911 (Laws 1911, ch. 249). Generally speaking, it is a statute providing for the improvement of country roads by the "benefit-district plan," by which the improvements were initiated by a petition addressed to the board of county commissioners, signed by the requisite number of the property owners within a designated district, stating the name of the road, or part thereof, which was to be improved, the points between which the improvements were to be made, the kind of improvements, and the number of annual assessments for the payment thereof, and providing a procedure before the county commissioners for the making of the improvement and assessing the costs thereof. This statute was amended by chapter

246 of the Laws of 1919, and some sections later amended by chapter 218 of the Laws of 1921, and became R. S. 68-701 *et seq.*

The action taken by the city and county in 1921 and early in 1922 was under the authority of chapter 219 of the Laws of 1921, which amended sections 15 and 54 of chapter 264 of the Laws of 1917. Because these statutes were deficient in matters of procedure the parties had looked to chapter 265 of the Laws of 1917, which related to the improvement of country roads under the benefit-district plan, without having any specific authority to do so. Obviously these statutes were inadequate to carry out the work contemplated. The proceedings lay dormant until the enactment of chapter 211 of the Laws of 1925. This, as we have seen, specifically amended chapter 219 of the Laws of 1921, which, in turn, had specifically amended sections 15 and 54 of chapter 264 of the Laws of 1917. It did not purport to amend chapter 265 of the Laws of 1917 relating to the improvement of country roads by the benefit-district plan. This chapter, 211 of the Laws of 1925, while general in its terms, was so worded that perhaps it could apply only to the city of Galena and Cherokee county. At any rate, we are informed that no other city has attempted to act under it. The subsequent proceedings were wholly under that statute. New contracts and agreements were entered into between the city and the county, providing, among other changes, a new method of apportioning between them the expense of the project. These related only to improvement of that part of the project from Main street to the east line of the city, and the route of that was changed from the original plan. Those portions of the original plan beginning at the west line of the city, thence east to Main street, thence north on Main street, were abandoned. The new project required the laying out and locating of a street, which the city agreed to do, and did do, by the exercise of the ordinary powers of cities in laying out new streets, including the power of eminent domain. The improvement from Main street to the east line of the city was designated as a specific project and divided into sections. It called for the construction of a viaduct, a part of the expense of which was borne by the railroad, and it called for the construction of a bridge, the expense of which was borne by the county. The parties were able to get federal aid, for the act of congress of June 11, 1916, which authorized the United States to aid the states in the construction of rural post roads, defined "rural post roads" to mean any public road over which the United States mails

are or may be transported, excluding streets and roads in a place having a population of 2,500 or more, "except that portion of any such street or road along which the houses average more than two hundred feet apart." (39 U. S. Stat. p. 356.)

Let us now examine the statutes creating the state highway commission and defining its powers and duties as they relate to the question before us. The state highway commission was created by chapter 264 of the Laws of 1917, and was given general supervision over the construction, improvement and maintenance of highways under the road and bridge laws of the state. Highways were classified as county roads and township roads, and, generally speaking, the expense of their construction and maintenance was borne by the county or township, respectively. The statute heretofore noted for the improvement of highways under the benefit-district plan remained in force. The statute creating the state highway commission was amended in 1919 (Laws 1919, ch. 245) and again in 1921 (Laws 1921, ch. 217). This last-mentioned statute created what was called a "state-aid road fund in each county with a part of the moneys received for motor-vehicle registration fees and motor-vehicle-fuel tax. It provided (sec. 8) for reimbursement of the cost of the construction of roads under the benefit-district plan. This statute was amended in 1923 (Laws 1923, ch. 175), and under it the highways continued to be classed as county roads and township roads. In 1925 the legislature passed an act (Laws 1925, ch. 214) providing for the "construction, reconstruction and maintenance of a system of state highways." Section 2 of the act reads:

"That the state highway commission, in conjunction with the boards of county commissioners, shall designate in every county in the state certain highways, the total mileage of which shall not exceed 8,690 miles, and the total mileage of which in each county shall not be less than the sum of the north to south and the east to west diameters of the counties and which shall connect the county seats and principal cities and market centers. Which highways shall constitute the state highway system. Said state highway system shall include all roads heretofore approved by the state highway department and the federal government under the federal highway act. The system of roads thus designated shall be constructed, reconstructed, improved and maintained by the boards of county commissioners of the several counties subject to the supervision of the state highway commission from funds hereinafter provided."

The funds used were derived from the tax on motor-vehicle fuel and motor-vehicle registration fees. The work on the road was

done under contracts let by the county, approved by the state highway commission, and a provision was made for the reimbursement for roads constructed under the benefit-district plan. This act was amended by chapter 255 of the Laws of 1927, in many respects, but carrying out the same general plan.

At the general election in 1928 a constitutional amendment was adopted (art. 11, § 8) which authorized the state to "adopt, construct, reconstruct and maintain a state system of highways . . ." This was the first time the state had full authority under the constitution to construct and maintain a state highway system.

The next session of the legislature passed an act (Laws 1929, ch. 225) to carry out that constitutional provision. By this act, generally speaking, the state took over the work of constructing, improving and maintaining the state highway system formerly done by the county under the supervision of the state highway commission. Funds for that purpose were provided. Section 3 of the act reads:

"That the state highway commission shall designate, adopt and establish and may lay out, open, relocate, alter, vacate, redesignate and reëstablish highways in every county in the state, the total mileage of which shall not exceed 8,690 miles, and the total mileage of which in each county shall not be less than the sum of the north to south and east to west diameters of the county, and which shall connect the county seats and principal cities and market centers which highways and all bridges and culverts thereon shall comprise the state highway system: *Provided,* That the highways heretofore designated as state highways shall be a part of the state highway system and no substantial change therein shall be made except when the public safety shall require such substantial change. Highways designated under this act shall be state highways, and all other highways shall be either county roads or township roads as provided for elsewhere in the Kansas statutes. The state highway system thus designated shall be constructed, improved, reconstructed and maintained by the state highway commission from funds hereinafter and otherwise by law provided. In addition to the designation of highways as herein provided, the state highway commission shall designate in those cities on the state highway system certain streets as connecting links in such system."

With respect to reimbursement of the cost of roads built under the benefit-district plan, section 17 (3) provides that certain of its funds

". . . be used by the state highway commission in the county to which it is apportioned as follows: First, where roads on the state highway system have been built under the benefit-district plan to payment and reimbursement of benefit-district assessments as provided in section 18 of this act; and for the payment of the principal sum of outstanding warrants issued by any

county for the construction, improvement or reconstruction of the state highway system; . . ."

Section 18 of the act provides in detail how the reimbursement should be made, and this section was amended by chapter 247 of the Laws of 1931. The city of Galena and the county of Cherokee contend that the statutes last referred to (Laws 1929, ch. 225 and Laws 1931, ch. 247) make it the duty of the state highway commission to reimburse them for the cost of the improvement in question, while the state highway commission contends these statutes do not have that effect. Our statutes and decisions have at all times made a distinction between streets in incorporated cities and roads or highways in the country with respect to their construction or improvement. (*State, ex rel., v. State Highway Comm.*, 136 Kan. 652, 17 P. 2d 839.) A consideration of the provisions of chapter 225 of the Laws of 1929 makes it clear that the act applies to highways outside of incorporated cities. The "state highway system" which the state highway commission by the act was authorized to designate and establish is one "which shall connect the county seats and principal cities and market centers." It applies to roads or highways between cities—not within them. It recognized the distinction of city streets by providing (last sentence, sec. 3), "In addition to the designation of highways as herein provided, the state highway commission shall designate in those cities on the state highway system certain streets as connecting links in such systems," and by section 17, (4) it is provided that the state highway commission shall apportion to the cities $250 per mile for maintenance of streets designated as connecting links, or in lieu thereof maintain such streets in cities of the third class. It is clear that our highway system, authorized by our present constitution, constructed and maintained by the state through its state highway commission, has to do only with highways outside of the corporate limits of cities, except as to certain city streets used as connecting links, and perhaps some other specific instances specially provided for.

It is clear, also, that the provisions of sections 17 and 18 (Laws 1929, ch. 225), above referred to, for the reimbursement of benefit-district assessments for highway improvements under the benefit-district plan, referred to those improvements made under the general law for the improvement of country roads by the benefit-district plan provided for in chapter 265 of the Laws of 1917, with amendments thereto, which were incorporated in our Revised Statutes of

1923 as sections 68-701 to 68-709, for in the earlier part of section 17 it is provided that the funds received by the various counties from the sale of benefit-district bonds issued under R. S. 68-701 to 68-709 should be transferred from the county treasurer to the state treasurer, and by him placed in the state highway fund; and further provided that the county in which benefit districts had been organized under R. S. 68-701 to 68-709 should not be relieved from the duty and liability to issue and sell bonds under those statutes. In other words, the state highway commission was required to complete any unfinished improvement made in the roads or highways under the benefit-district plan, but it was to have the money or bonds with which to make such improvement. No such transfer of bonds was made with reference to the work done under chapter 211 of the Laws of 1925, as the work in question here was done. We conclude the state highway commission has no obligation or duty to perform with respect to the payment of the improvements in question.

As between the city of Galena and the county of Cherokee there is a controversy as to how the $5,000 donated by the Joplin good-roads committee should be applied—whether to the cost of the construction of the improvement as a whole, or alone to the county's share of such cost. The statute under which the improvement was made (Laws 1925, ch. 211) provides for the apportionment of the cost as follows:

(a) "If all or any portion of said improvement is entitled to and does receive federal or state aid or donations, the same shall be applied to the cost of the improvement for the purpose and to the extent for which the same was given. (b) The remainder of the cost shall be apportioned, fifty per cent to the county and fifty per cent to the city. . . ." (§ 4.)

By the resolution passed after this statute took effect the city agreed to join with the county in constructing the improvement in question, "and to bear its proportion of expense . . . as is provided for" by this statute. This was presented to the county commissioners in April, but consideration of it was continued from time to time until September 14, 1925, at which time the board of county commissioners accepted the proposal of the Joplin good-roads committee and the St. Louis-San Francisco Railway Company and resolved to proceed to sign the contract with the city. The agreement with the Joplin good-roads committee recited the interest of that committee in the federal-aid project No. 96, located in the city of

Galena, being the project the cost of which is in question, and by it the committee agreed, among other things, "to pay to the county of Cherokee $5,000 to assist the county in paying their share of the costs of the whole project, as provided by law and described in the petition and shown by plans prepared by the county." The county commissioners entered this agreement and the acceptance thereof on its journal and received the money. There is no agreement on behalf of the city that this money should be applied upon the county's share alone, nor is it clear from the offer and acceptance that it was so intended. As between the city and the county, the county was to finance the project and issue warrants for the payment of the work and apportion the same after the work was completed. The donation was to apply upon "their share of the cost of the whole project, as provided by law." It will be noted that the plural pronoun is used, and the cost of the whole project was within the contempla-. tion of the parties, as well as the provisions of the statute which, as we have heretofore seen, provide that donations as well as federal or state aid shall be applied to the cost of the improvement and the remainder apportioned, one-half to the county and one-half to the city. We conclude that this donation should have been applied upon the entire cost before a division of the remaining cost was made between the city and the county.

For the purpose of illustrating our views on the apportionment between the city and the county we shall use the figures heretofore set out, although we understand they are subject to correction, and interest computations may need to be taken into account. The total cost of the project was $74,064.65. Federal aid received and applied was $19,256.63, leaving a balance of $54,808.02. From this should be deducted the $5,000 donated by the Joplin good-roads committee, leaving $49,808.02. The city and the county each was obligated to pay one-half of that. The city's share was $24,904.01. On this the city should have credit from the county for $3,711.87 taxes levied by the city and collected and retained by the county, leaving a balance due from the city of $21,192.14. The city should pay this sum, and if it does not have the money to do so it should issue its bonds for that purpose, as provided by statute (Laws 1925, ch. 211). The county should pay the rest of it. It has heretofore issued bonds for a part of the amount and should issue bonds for the balance if it does not have money with which to pay it.

We understand the parties desire, principally, an adjudication of

their respective duties and liabilities, and these have been determined. The writ of mandamus will issue only on the præcipe of the plaintiff.

Writ allowed as to the county and city and denied as to the state highway commission.