No. 31,823

The State of Kansas, *Appellee,* v. Fred E. Fisher, *Appellant.*

(38 P. 2d 120)

Opinion filed December 8, 1934.

*J. N. Tincher, Charles Hall* and *Clyde Raleigh,* all of Hutchinson, for the appellant.

*Roland Boynton,* attorney-general, *E. E. Steerman,* assistant attorney-general, *John W. Wood,* county attorney, and *James B. Nash,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

Burch, J.: Defendant was convicted of violation of the speculative securities act, and appeals.

The information contained six counts, charging sales of preferred stock of the Fisher Ranch Corporation, after registration of the stock had been suspended. Proof of sales of the stock was not contested, and other evidence applied equally to all counts, but the jury convicted on three counts only. Defendant was sentenced to hard labor in the penitentiary for a term of not less than one year and not more than seven years on each count, the sentences to run concurrently.

Defendant was president of the Fisher Ranch Corporation, a Delaware corporation. The corporation was admitted by the charter board to engage, in this state, in general farming and stock raising. On August 27, 1930, the corporation was given a permit to sell its preferred stock.

The corporation gave 204-206 N. Market street, Wichita, Kan., as the location of its principal office or place of business in Kansas. The permit to sell stock was granted to "The Fisher Ranch Corporation, of Wichita, Kan." The proof at the trial was that the principal office of the corporation was at 204-206 N. Market street, Wichita, Kan. There was no known document showing change of location of the principal office, and the assistant bank commissioner in charge of securities, who was a witness at the trial, did not testify there had been any change of address.

The corporation owned about 7,200 acres of land, which were devoted to farming and stock raising. Its operations were conducted from the ranch, north of Tribune, Kan., where an office was maintained, and some books and records were kept. A receiver for the corporation was appointed on December 5, 1931. Between May 31 and December 5, of that year, large sums of money were deposited by the corporation in the Union National Bank of Wichita, and were checked out, which accrued from sale of stock, wheat and other things. During that period land was sold to the amount of $100,-000. When the receiver was appointed he took possession of about 23,000 bushels of wheat in the bin, 7,000 acres of growing wheat, and between 1,400 and 1,500 head of cattle. The business address of the corporation was R. F. D., Tribune, Kan.

The statute under which defendant was prosecuted regulates

granting, denial and cancellation of permits to sell securities, and provides for suspension of granted permits. If, in considering an application for a permit to sell securities, the charter board should find any one of eight specified conditions to exist, a permit should be refused. The sixth stated condition is that the business of the applicant is unlawful, or against public policy. The statute continues as follows:

"If the charter board shall find that none of the conditions last above named exist, it shall direct the bank commissioner to issue a permit authorizing the sale of such securities, which permit may be revoked at any time by said charter board upon complaint made and after a hearing as herein set out:

. . . . . . . . . . . . . . . .

"That upon complaint being made to the bank commissioner or to the charter board and notice being given to the bank commissioner of such complaint, said bank commissioner may forthwith suspend the order granting the permit, pending final hearing, and during such suspension no securities shall be sold or offered for sale. It shall be the duty of the bank commissioner, upon issuing the order of suspension, forthwith to notify the parties affected by such order and to set a time and place for the hearing of such complaint by the charter board, which hearing shall not be later than thirty days from the date of said order of suspension. It shall be sufficient notice to the promoter or parties interested, of the complaint and of the order of suspension, if the bank commissioner shall mail such notice to the address of such promoter or parties interested as furnished at the time of the filing of the application, or any change of address given to the bank commissioner subsequently.

"If the charter board, upon a full hearing, shall find that there are just grounds for the complaint made . . ., said charter board shall make an order canceling the permit hereinbefore granted." (R. S. 1930 Supp. 17-1229 (3) (5) (6).)

On April 29, 1931, Carl Newcomer, special assistant bank commissioner in charge of securities, dictated the following letter, addressed to the Fisher Ranch Corporation, Tribune, Kan.:

"On account of pending litigation in connection with the ousting in Kansas of the wheat-farming corporations, the charter board has deemed it advisable to suspend all wheat-farming corporations until such time litigation has been terminated.

"While very few have been selling stock in the last months, this step is taken as a matter of protection both by the companies and by the investors."

The testimony at the trial raised the question whether the letter was received at Tribune. E. E. Fisher, who had charge of the Tribune office and of the mail there, testified he never received such a letter. Newcomer testified the letter was actually addressed and mailed to the corporation at Tribune; but he testified he did not see the letter placed in the mail. He further testified he had other cor-

respondence with the ranch corporation about that time, but most of it was with the Wichita, Kan., office, and he had no other correspondence which he had addressed to the corporation at Tribune. There was no proof of any system or usual course of conduct in the assistant bank commissioner's office whereby letters which he dictated regularly reached the mail.

The government mail service is such as to evidence due delivery of a properly mailed letter, and the placing of a letter in the mail may be proved by circumstantial evidence. (*Ennis-Baynard Petroleum Co. v. Plainville Mill and Elev. Co.*, 118 Kan. 202, 235 Pac. 119.) But in this instance Newcomer did not mail the letter nor see it mailed. He had no knowledge of performance in fact of any act or series of acts which actually constituted placing the letter in the mail. His testimony shows he merely believed the letter was mailed, and his testimony, unsupplemented by evidence furnishing a fair foundation for an inference of mailing, such as habit, practice, custom, and the like, was too slight to be the basis of a sentence to a term in the penitentiary at hard labor.

Passing the subject of putting the notice of suspension in the mail, suspension of permit does not expose a seller of securities to prosecution. The statute recognized necessity for notice of suspension. Guilt depends on notice of suspension. The provision of the statute for service of notice by mail governs, and notice sent to Tribune instead of Wichita was nugatory. The penalty for violation of the speculative securities act is drastic. Doubtless it is necessarily so, but the bank commissioner must follow the law, as well as a seller of securities.

Defendant moved the court to quash the information on the ground it did not state facts sufficient to constitute a public offense. The motion was denied. The information merely alleged defendant knowingly sold securities after registration had been suspended by the charter board. As indicated, defendant was guilty of no public offense unless, after suspension of registration, and after notice of suspension given in the manner prescribed by statute, he then sold securities. The information contained no reference to notice of suspension, and the motion to quash should have been allowed.

By requested instruction defendant called the court's attention to the fact there was no proof of notice by mail to the address which the legislature took pains to specify, and asked for a directed verdict of not guilty. A verdict of not guilty should have been directed.

Passing the subject of service of notice, there was no evidence any complaint was made by anybody to the bank commissioner, or to the charter board, that the business of the corporation was unlawful or against public policy, or that its business or operations were irregular in any respect.

In stating the issues to the jury, the court told the jury the state charged that the 1931 house of representatives passed a resolution requesting the attorney-general to file suit to oust all farm corporations from doing business in Kansas, and shortly afterward Newcomer wrote a letter to defendant, notifying him the charter board deemed it advisable to suspend .all farm corporations until such time as litigation terminated. The issues in the case were made by the information and the plea of not guilty. The state made no charge whatever respecting action of the house of representatives, and made no charge that Newcomer wrote a letter.

The court gave the jury an instruction, the first part of which reads:

"You are further instructed that the law provides that a permit to sell stock or securities in this state may be revoked at any time by the charter board upon complaint made and after a hearing upon the complaint, and that upon complaint being made to the bank commissioner or to the charter board and notice being given to the bank commissioner of such complaint, said bank commissioner may forthwith suspend the order granting a permit pending final hearing, and during such suspension no securities shall be sold or offered for sale."

That may be accepted as a statement of the law, as far as the statement goes, but the court continued as follows:

"The state does not contend that any complaint was made under this law, but that the suspension was made as a result of the resolution passed by the house of representatives."

It is true the state did not contend any complaint was made under the law, and that should have ended the case. The record is barren of any contention the resolution of the house of representatives had anything to do with the suspension. Newcomer's letter said litigation concerning ouster of farm corporations was pending, and because of that litigation the charter board deemed it advisable to suspend wheat-farming corporation permits. Who commenced the litigation, or why it was commenced, does not appear anywhere in the record, except in the court's instructions, and by obtruding the house of representatives' resolution into the instruction, the court gave the jury to understand something as good as, or perhaps better

than what the legislature, by regular enactment, prescribed, would do in the prosecution of Fred E. Fisher.

The court also gave the jury the following instruction:

"The court instructs the jury that before The Fisher Ranch Corporation was authorized to sell stock in the state of Kansas, it was necessary for it to procure the permission of the state charter board, and before the state charter board was authorized to order the issuance of said permit it was necessary for them to find the enterprise and business of The Fisher Ranch Corporation and its promoters was not unlawful and against public policy. And in this connection the court further instructs the jury that if you find and believe from the evidence in this case that subsequent to the issuance of a permit to sell stock the state charter board found that the enterprise and business of The Fisher Ranch Corporation was not a lawful business and was against public policy, that it had the inherent power to suspend their permit to sell stock without previous notice to The Fisher Ranch Corporation."

There was not the slightest basis in the proceeding for this instruction. There was no issue in the case respecting granting the permit to sell securities, nor duty of the charter board in granting the permit. Newcomer's letter stated the basis for the suspension order, and there was no evidence from which the jury could find the charter board ever found the corporation's business was unlawful or against public policy.

Whether the charter board had inherent power to suspend without previous notice was beside the case. Defendant was prosecuted under a statute which granted whatever power there was to suspend, and that statute granted power to suspend without previous notice.

The suspension order was made on April 29, 1931. The sales charged in the information were made on June 3, June 6, and August 3, 1931. When the prosecution was commenced does not appear. The preliminary examination was held on September 16, 1932. The date on which the information was filed is not given. The amended information on which defendant was tried was filed December 15, 1933, the day the trial commenced. Of course, the substance of the information was not then materially changed.

It so happened that on June 10, 1933, this court rendered its decision in the wheat-farming company cases, commenced by the state, on the relation of the attorney-general, against two wheat-farming corporations. It was held a corporation may not be chartered to engage primarily in conducting farm operations for profit. (*State, ex rel., v. Wheat Farming Co.*, 137 Kan. 697, 22 P. 2d 969.) That

being true, a foreign corporation could not be admitted to conduct such operations in this state.

When the decision of this court was rendered, prosecution of defendant had been pending for more than a year, for an offense committed more than a year before prosecution was commenced. The court, however, brought the subject up to date by the following instruction to the jury:

"You are further instructed that the operations of The Fisher Ranch Corporation were illegal and that although they had been granted a right to sell their securities and stock by the bank commissioner, there was no provision of the law for the sale of any such stock within the state of Kansas. Therefore, not having been legal in the first instance to sell their securities, it was not necessary for a complaint to have been filed with the charter board in order for the bank commissioner to suspend the sale of securities."

The Fisher Ranch Corporation was not a party to the wheat-farming company cases, and no independent action was commenced against the Fisher corporation. The actions in the wheat-farming company cases were civil actions, and neither defendant nor his corporation was bound by the judgments in those cases. If proceedings had been commenced to oust the Fisher corporation, the final judgment might have been the same as in the decided cases, but the corporation would have been entitled to be heard; and until the corporation was given an opportunity to be heard, the court was not authorized to lug into a prosecution designed to deprive defendant of his liberty, a pronunciamento regarding legality of the corporation's business.

The statute plainly makes suspension of a permit an incident to a proceeding before the charter board, initiated by complaint to the bank commissioner or to the charter board. Complaint is mentioned in the statute six times. It is not for this court to say, in this proceeding, who may make complaint, or to say what form or content of a complaint will suffice. It may be surmised a written statement by the attorney-general to the bank commissioner or to the charter board, that a corporation's business is illegal or against public policy, would serve the purpose. But the statute is a highly penal statute, and the courts are not authorized to read out of it what the legislature put into it. In this instance defendant was not convicted under the statute, nor according to the statute.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the motion to quash the information.