No. 31,096.

J. I. CASE COMPANY, *Appellee,* v. THE SINNING BROTHERS MOTOR COMPANY, *Appellant.*

(21 P. 2d 328.)

Opinion filed May 6, 1933.

*Floyd A. Sloan, W. Glenn Hamilton,* both of Topeka, and *Albert M. Cole,* of Holton, for the appellant.

*Floyd W. Hobbs,* of Holton, *Oscar D. McCollum, Milton Schwind* and *Walter R. Barnes,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on a promissory note. Judgment was for plaintiff. Defendant appeals.

The petition prayed for judgment on the note for $484.20. Defendant filed an answer and cross petition. The cross petition alleged that the defendant had entered into an agency contract with plaintiff whereby the plaintiff agreed to pay defendant twenty per cent commission on all combines and other farm machinery sold through the agency of defendant and paid for in cash at the time of the delivery. The cross petition alleged further that two combines had been sold by plaintiff through the agency of defendant for $1,000 each; that defendant should have been allowed $200 commission each on these combines and that defendant was only allowed $80 commission on one combine and $79 commission on the other. Defendant alleged that on this account plaintiff was indebted to defendant in the sum of $241. Defendant made other allegations in his cross petition which are not of interest here. In answer to these allegations in the cross petition plaintiff admitted

the agency contract and the sale of the combines for $1,000 each, but alleged that the contract provided that commissions on all goods sold should be calculated on the list price and that all discounts, including cash discounts allowed a purchaser, should be charged against the commission. The answer further alleged that the full list price of the combines sold was $1,150 each; that $150 was deducted from the sale price of each combine and the same amount was deducted from the commission due defendant and that this left due defendant $80 on one combine and $79 on the other, the difference being $1 exchange for a bank draft drawn on defendant.

To this answer of plaintiff to the cross petition defendant filed a reply denying that the plaintiff rightfully deducted from the commission of the defendant on the sale of each of the combines mentioned the sum of $150 and alleging that if there was a deduction or discount made by said plaintiff it was without the knowledge or consent of defendant.

With the pleadings so framed the jury answered special questions as follows:

"1. At the time of the sale of the Bailey and Smith combines did J. I. Case Company have a fixed, printed or written 'list price' for these two machines; or do you find that the list price of these two machines was a price fluctuating to correspond with the conditions of each individual sale to be determined by the J. I. Case Company at the time the transaction took place? A. Yes, J. I. Case Company has a fixed and printed 'list price.'

"2. What was the list price of the Bailey and Smith machines? Bailey $1,150. Smith $1,150.

"3. Did the defendant know of, authorize or consent to a discount on either of the machines sold to Bailey or Smith? A. Yes."

Judgment was entered accordingly.

On appeal defendant argues that these findings and judgment were contrary to the evidence.

After some general statements the manager of the defendant testified as follows:

"That the representative of the plaintiff, Elder, advised Sinning that sales price of the machines was $1,000.

"Q. At that time was the amount of commission credited to you explained by Chadwick? A. He said they cut the price on the machine and we had to stand the cut.

"Q. Did he tell you the list price on the combines? A. He did not.

"Q. Have you ever, up to this time, heard or learned the list price on the ten-foot combines? A. No, sir, don't know what they are to-day.

"Q. You took part in the deal only with the knowledge received from Elder they might be sold for $1,000? A. Elder, Roberts and Lockley, your men."

A witness for plaintiff testified as follows:

"Q. I hand you plaintiff's Ex. A, and ask you to state what that is. A. It is a price list of secondhand machinery at our branch in Kansas City dated Feb. 2, 1928. It was a list covering secondhand machinery which we had offered for sale.

"Q. At the time that list was made up, Feb. 2, 1928, was the defendant company a dealer of the plaintiff company? A. They were.

"Q. What was the purpose of making up that list? A. To give our dealer the list price of secondhand machinery we had for sale.

"Q. What did you do with that list? A. It was mailed to all of our dealers, including our salesmen.

"Q. Who has charge or supervision over mailing out these secondhand price lists? A. Myself.

"Q. Do you know now that a copy of that list was mailed to the Sinning Brothers Motor Company? A. It was mailed to all of our dealers.

"Q. I hand you plaintiff's Ex. B, and ask you to state what it is, if you know. A. It is a cash-sale report.

"Q. On account of what transaction? A. L. C. Smith, covering the sale of a combine.

"Q. To whom was the order for that cash sale reported? A. It was mailed to the dealer through whom the machinery was sold.

"Q. The Smith machine was sold by the defendant company as plaintiff's dealer? A. Yes.

"Q. Do you know whether or not the order was mailed to the Sinning Brothers Motor Company? A. I did not see it mailed, it was sent to all our dealers.

"Q. I hand you plaintiff's Ex. C, and ask you to state what that is. A. A cash sale report.

"Q. On account of what transaction? A. The sale of a combine to H. L. Bailey.

"Q. Was that a transaction for which the defendant company was entitled to a commission credit? A. Yes.

"Q. The original of that is supposed to have been mailed to the party entitled to that credit? A. Yes."

Defendant argues that because this witness could not testify specifically that he mailed the various documents in question there was no evidence that they were mailed.

In the modern manner of carrying on business where there are thousands of letters sent out every day testimony that a particular piece of mail was put into the routine of being mailed is sufficient evidence that it was mailed without producing an employee of the company who can testify that it was dropped into the mail box. (See *Ennis-Baynard Petroleum Co. v. Plainville Mill & Elevator*

*Co.,* 118 Kan. 202, 235 Pac. 119; also, *Prescott, Wright, Snider Co. v. City of Cherryvale,* 134 Kan. 53, 4 P. 2d 457.)

We think there is sufficient evidence in this record to sustain the judgment.

The judgment of the district court is affirmed.