395 P.2d 719

**STATE of Arizona, Appellee,**

v.

**Lamon MAYS, Appellant.**

No. 1391.

Supreme Court of Arizona.

In Division.

Oct. 8, 1964.

Robert W. Pickrell, Atty. Gen., Merton E. Marks, Asst. Atty. Gen., for appellee.

Sandor O. Shuch, Phoenix, for appellant.

STRUCKMEYER, Justice.

Appellant Lamon Mays was tried and convicted by a jury on two counts of drawing checks on no account with intent to defraud in violation of A.R.S. § 13–316.

Mays opened a commercial checking account in the name of the Mays' Cafe with the Bank of Phoenix in July of 1961. Less than a month later the bank closed the account because of numerous overdrafts. Ap-

proximately 13 months later Mays cashed two checks drawn against the account: one, on September 6, 1962, cashed with Jack Penrose, a drug store manager, and a second on September 21st cashed with Genevieve Watson, a shoe store cashier. Penrose and Watson positively identified Mays as the person who cashed the checks.

Appellant urges that reversible error was committed in the trial court by the admission into evidence of a carbon copy of a letter from the Bank of Phoenix advising appellant that they were closing his account when no evidence had been introduced that he had received the original. Evidence by the operations officer of the Bank of Phoenix, James Garner, established that Mays opened a commercial checking account in the name of Mays' Cafe in July of 1961 and that about three weeks later, in August, this account was closed out by the bank. The prosecution offered in evidence a carbon copy of a letter found in the bank's file dated in August of 1961 and addressed to the appellant advising him that his account had been closed. It is the admission of this letter into evidence which appellant assigns as error. The State urges that the carbon copy of the letter tended to show knowledge.

It is the settled law of this state that there is a strong presumption that a letter properly addressed, stamped and deposited in the United States mail will reach

the addressee. We have even held that in civil cases a verdict of a jury in opposition to this presumption when there is no evidence of nonreceipt is against the weight of the evidence. Merchants' & Manufacturers' Association v. First National Bank of Mesa, 40 Ariz. 531, 539, 14 P.2d 717.

The rule controlling in civil cases finds ample support in the criminal law. In Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861, the Supreme Court of the United States approved its application to a criminal case in this language:

"The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed. Rosenthal v. Walker, 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395. And the fact that receipt of the letter subjects the person sending it to a penalty does not alter the rule. Id., page 194 of 111 U.S., 4 S.Ct. 382, 28 L.Ed. 395. If the indictment had alleged actual delivery of the letter in question, the case for the government in this particular would have been made out by proof that the letter thus directed had been placed in the post office for transmission. The burden then would have been cast upon petitioners to show the contrary." 285 U.S. 427, 430, 431, 52 S.Ct. 417, 419.

While a presumption arises from a letter addressed, stamped and deposited in the United States mail that it will reach the addressee, facts less than direct and positive testimony of its being addressed, stamped and mailed, while insufficient to raise a presumption, may support an inference that the letter reached the addressee.

" 'Generally speaking, issues may be established in both civil and criminal cases by circumstantial evidence' * * *.

\* \* \* \* \* \*

"The existence of a carbon requires the existence of the original, and proof that a carbon existed requires the inference that an original also existed.

\* \* \* \* \* \*

"[This] shows that the evidence now offered is not only sufficient to support an inference that the letter in question was prepared *and mailed,* but in the light of reason is not reconcilable with any other inference." United States v. Rice, D.C., 281 F. 326, 335, 336. (Emphasis supplied.)

Furthermore, it is unnecessary for the person who mailed a letter to appear and testify that the original was mailed. The reason for this was pointed out in J. I. Case Co. v. Sinning Bros. Motor Co., 137 Kan. 581, 583, 21 P.2d 328:

"In the modern manner of carrying on business where there are thousands of

letters sent out everyday, testimony that a particular piece of mail was put into the routine of being mailed is sufficient evidence that it was mailed without producing an employee of the company who can testify that it was dropped into the mail."

Cf. Consolidated Motors, Inc. v. Skousen, 56 Ariz. 481, 109 P.2d 41, 132 A.L.R. 1040; Mohr v. Universal C. I. T. Credit Corp., 216 Md. 197, 204, 205, 140 A.2d 49.

 The carbon copy of the notice by the bank to the appellant that his account was closed was dated August 7, 1961. As pointed out, thereafter in September, 1962, appellant cashed the two checks on which this prosecution was founded. The fact of the existence of a carbon copy is not alone sufficient to raise a presumption of receipt, but that fact coupled with the inactivity in the appellant's commercial account is sufficient to support the conclusion that appellant had knowledge of the nonexistence of an account with the Bank of Phoenix during the month in which the checks were drawn. Accordingly, we hold that the carbon copy of the letter was admissible and that the evidence was sufficient to support a conviction. Cf. Whitney v. United States, 5 Cir., 328 F.2d 888.

Appellant's further assignment of error stems from the cross-examination of Pen-

rose. At the trial, the defense attempted to question the source of Penrose's knowledge that Mays was the man who had cashed the check. The following occurred:

Defense Counsel:

"Q Did you have occasion to talk to the county attorney's office before identifying the defendant?

"A No, I was never in his office.

"Q Did you talk to him at Justice Flood's Court?

"A Just in the room, just talking to him, you know, just * * *"

Assistant County Attorney:

"If the Court please, I am going to make an objection to that type of question. Counsel well knows that there is nothing objectionable about talking to the parties. The jury may get the impression that maybe there is something objectionable about talking to an attorney.

"THE COURT: Yes. Stay on the issue, what took place."

Defense Counsel:

"Q And on February 26, 1963, do you recall what clothes Mr. Mays was wearing at that time?"

Appellant urges that he may properly discredit a witness by testing the accuracy of his recollection; that after receiving a negative reply to his question concerning wheth-

er he had talked to the county attorney before identifying the appellant, the witness qualified his answer by stating that he had never been in the county attorney's office; that he was attempting to bring out any conversation which might have helped the witness identify appellant.

■ Appellant argues that the court cut off this line of inquiry by advising the counsel to "Stay on the issue, what took place." What the court meant by the response to the objection is uncertain. The response is subject to the interpretation when examined in the context of the witness's last answer that the court was of the opinion there was no issue as to the propriety of the county attorney talking to the witness before the preliminary hearing in the justice court but that it was relevant for the appellant to inquire into what took place at the time the county attorney talked with the witness. If counsel did not understand the court's ruling, the failure to specify distinctly is not error where no request is made to be more specific.

" * * * we think that before the Trial Court can be put in error for the admission or rejection of testimony that it must be clearly shown that the attorney who considered himself aggrieved insisted on a ruling, and that the Court failed or refused to make one, or that on such insistence, the Trial Court made a

ruling and that such ruling was erroneous." Shelton v. Martin, 180 Tenn. 454, 457, 176 S.W.2d 247.

Cf. Kane v. Fields Corner Grille, Inc., 341 Mass. 640, 171 N.E.2d 287.

■■ We do not, however, hesitate to criticize the county attorney's objection as improper. Cross-examination should not be interrupted by objections of this frivolous nature. If the county attorney believed the jury received the impression that there was something objectionable about talking to the witness, this was a matter which the court could have properly covered by the giving of a requested instruction at the close of the case.

Appellant finally complains that the trial court further erred in limiting cross-examination. Appellant attempted to discredit the witness Genevieve Watson by testing her ability to observe and recall.

Defense Counsel:

"Q Did you see the defendant in the courtroom on May 13, 1963? That was the first day of the trial of this matter.

"A Yes.

\* \* \* \* \* \*

"Q And what type of clothes was he wearing on May 13th?

"A As I recall he was wearing a grey suit.

"Q The same suit that he has on today?"

Assistant County Attorney:

"Objection to that. It's beyond this witness's knowledge. We had two Mays in court and one grey suit

"THE COURT: I don't think there is enough foundation for the question, whether or not it was the same suit. I think we are going into the abstract."

Defense Counsel:

"Q What was he wearing on the day he cashed the check?" etc.

Here again the prosecution's objection is to be criticized. It tends to disclose to the witness the direction of possible discredibility and interrupt the continuity of the examination. While we cannot but disapprove of such a practice, clearly the court was not prohibiting this line of examination, it was guiding counsel by indicating to him that a proper foundation should be laid. Obviously the most the witness could say was that the suit appeared to be the same. Here again if counsel was uncertain as to the court's ruling, it was incumbent upon him to request that it be clarified. Shelton v. Martin, supra; cf. Kane v. Fields Corner Grille, Inc., supra.

Finding no substantial error, the judgment of the court below is affirmed.

BERNSTEIN and SCRUGGS, JJ., concur.