In re **RITE AUTOTRONICS CORPORA-TION, a California corporation,**
Debtor.

**DRESSER INDUSTRIES, INC.,**
Appellant,

v.

**RITE AUTOTRONICS CORPORATION,**
a California corporation, Appellee.

**BAP No. CC–81–1163–VHG.**

**Bankruptcy No. 80–07441–JB.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Sept. 16, 1982.

Decided Dec. 20, 1982.

James J. Moak, Adams, Duque & Hazeltine, Los Angeles, Cal., for appellant.

Sandra L. Bendon, Sulmeyer, Kupetz, Bauman & Rothman, Los Angeles, Cal., for appellee.

Before VOLINN, HUGHES and GEORGE, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### I. BACKGROUND

On July 30, 1980, an involuntary petition under 11 U.S.C. Chapter 11 was filed against the debtor, Rite Autotronics Corporation. An order for relief was entered on August 12, 1980. On August 18, 1980, the debtor filed its Schedule of Ten Largest Creditors. The appellant, Dresser Industries, Inc., ("Dresser"), was listed on this schedule with an unsecured claim of $105,756.43. One of the attorneys for Dresser was elected to and served as a member of the creditors' committee.

A plan was filed and a ballot to assume or reject the plan was mailed to Dresser's Los Angeles office on December 2, 1980. The ballot allowed each unsecured creditor to choose between two options, A or B, for payment under the plan. The creditor's failure to choose option A or B would result in that creditor receiving payment under option A. Plan ballots were to be returned to the secretary for the creditors' committee by December 26, 1980.

Dresser's Los Angeles office received a ballot on December 12, 1980, and forwarded it to Dresser's main office in Pittsburgh, Pennsylvania, where it was received on December 17, 1980. The ballot was then forwarded to the attorneys for Dresser in Los Angeles where it was received on December 23, 1980.

On December 30, 1980, the Bankruptcy Court entered an order confirming the debtor's plan. December 30, 1980, therefore, was the last day for filing proofs of claim. Bankruptcy Rule 11–33(b)(2).

Dresser's ballot was not mailed from the office of its attorneys to the secretary of the creditor's committee until January 21, 1981. On the same date the ballot was mailed, the attorneys for Dresser noticed that option A had been marked erroneously when Dresser had intended to choose opinion B. The attorneys for Dresser called the attorneys for the debtor to explain the error. The attorneys for the debtor agreed that the ballot submitted by Dresser would be considered amended to elect option B but indicated that it was the debtor's position that Dresser's claim against the debtor was barred for failure to file a proof of claim by the December 30, 1980 deadline. No agreement was reached with respect to the validity of Dresser choosing option B in light of the ultimately filing of the ballot. Dresser filed a proof of claim on January 31, 1981.

Dresser brought a motion for an order allowing it to participate in the plan under option B on the grounds (1) that it was not required to file a proof of claim because its claim was not disputed, or if it was required to file a proof of claim, failure to do so was due to mistake, inadvertence and excusable neglect, and (2) that its failure to timely file a ballot was due to mistake, inadvertence and excusable neglect. A hearing on the motion was held on March 17, 1981. The debtor contended that its Schedule of Assets and Liabilities was filed on September 15, 1980, and that Dresser's claim was listed as disputed in such Schedules. The Bankruptcy Court was unable to find the Schedule of Assets and Liabilities in the file and accepted what appeared to be a conformed copy from the debtor's attorneys. Two declarations appear in the record from attorneys for the creditor stating that on at least three separate occasions after January 21, 1981, a review was made of the court file to find the Schedule of Assets and Liabilities referred to by the debtor, or any other document which listed Dresser's claim as disputed, contingent or unliquidated and that no such listing could be found.

The Bankruptcy Court found that the debtor had scheduled Dresser's claim as disputed,[1] that the Schedules of Assets and Liabilities had been filed on September 15, 1980, and that Dresser had shown no basis for relief from its failure to file a proof of claim before the deadline. The Court also found that Dresser had shown no basis for relief from its failure to select option B prior to the deadline for filing ballots. The Bankruptcy Court then concluded that Dresser was required to file a timely proof of claim which it failed to do; that Dresser did not show mistake, inadvertence, or excusable neglect for its failure to file a timely proof of claim; and that even if the proof of claim were timely filed, Dresser's failure to timely file its ballot electing option B would only have allowed it to participate in option A to the extent that its claim might have been allowed.

Dresser has appealed the decision of the Bankruptcy Court holding that it had not timely filed a proof of claim and the ruling that even if it had timely filed a claim, it could not participate in the plan under option B.

## II. MOOTNESS AND THE STAY

■ Appellee, in its brief, filed July 26, 1982, stated that this appeal should be stayed, because

"Counsel for the Debtor and Respondent no longer represents said Debtor. An involuntary chapter 7 petition was filed against the Debtor on March 24, 1982, as case No. LA. 82–04838–RO... Said filing took place after the order confirming the plan in the instant chapter 1 case was confirmed and the Debtor revested with its assets. On May 17, 1982, an order for relief in said subsequent chapter 7 case was entered. The provisions of 11 U.S. Code § 362 apply and effectively stay the instant appeal."

Appellee further states that there is an issue, in view of the subsequent petition, as to whether this appeal is moot.

Appellee has not sought, by motion or otherwise, to independently present the issues of mootness or stay to the Panel. Despite the passage of a substantial period of time during which the second involuntary case has been pending, the parties have proceeded to argument on issues related primarily to the filing of a claim in the first proceeding. There is no showing that events in the later bankruptcy will determine or render moot the principal issue on appeal. Indeed, it appears that if appellant succeeds, funds are held in escrow to provide for payment of the dividend it would have received, and this dispute not taken place.

While appellant has argued that it was entitled to a choice of options and that it should be entitled to select option B, instead of being confined to option A, it would appear that it contemplates that this issue

---

1. It appears that appellee, in its schedules, disputed the claims of all unsecured creditors. See reference to contents of schedules, debtor's Memorandum, E.R. 34.

may be moot. In its brief, appellant notes the subsequent involuntary petition and states (p. 7):

"Dresser intends to file a proof of claim in the new bankruptcy action against Rite. To eliminate any potential issue regarding that claim, Dresser seeks a reversal of the Bankruptcy Court's July 7, 1981 order insofar as it disallows Dresser's $105,756.43 claim against Rite and prevents Dresser from recovering its share of the tax refund (which is being held in escrow)[2] and from seeking recovery of its claim in the new proceeding."

Whether or not the later bankruptcy case affects the prior one is not clearly discernible. The parties, while noting the pendency of the prior case, nevertheless proceeded to address themselves to the merits of this appeal. Under the circumstances, we are of the view that the best interests of all concerned would be best served by a determination of the issues presented to us.

## III. TIMELINESS OF THE CLAIM

■ At the outset it may be observed that where a debtor questions the quality of a claim thereby placing the creditor in a position of potential default and loss, due process would call for specific notice to the creditor. Filing of schedules at a place frequently far removed from the location of the creditor, as a practical matter, is not an optimal method for providing the creditor with an opportunity to learn that there is a dispute or question concerning his claim. Thus, it is questionable as to whether there has been sufficient notice to the creditor as to the facts and basis of the dispute.

■ In any event, the cases in analogous factual settings sanction the filing of claims after the formal time for filing has expired. The United States District Court for the Western District of South Carolina in *In re Fant,* 21 F.2d 182 (W.D.S.C.1927) states the applicable rule:

"[W]here there is anything in the record in the bankruptcy case which establishes a claim against the bankrupt, it may be used as a basis for amendment after the expiration of the statutory year, where substantial justice will be done by allowing the amendment."

In *Fyne v. Atlas Supply Co.,* 245 F.2d 107 (4th Cir.1957), the *Fant* rule was used to permit a creditor to file a formal amended claim where such creditor's judgment against the debtor was the basis for the filing of an involuntary petition in bankruptcy for the debtor; the claim was listed on the debtor's schedules amounting to about half of the estate's indebtedness; and the attorney for the creditor participated in the first meeting of creditors. The creditor's attorney erroneously assumed that his client's former attorney had filed a proof of claim when in fact none had been filed.

The Ninth Circuit has cited *Fant* with approval in *Sun Basin Lumber Co. v. United States,* 432 F.2d 48 (9th Cir.1970). In *Sun Basin,* a secured creditor asserted a claim against the debtor's estate when the proceeds of sale of its collateral was insufficient to satisfy the amount due to it. Even though a formal proof of claim had not been filed within the statutory period, the creditor did file an objection to the trustee's petition to sell real property mortgaged to the creditor and a petition to reclaim the property. The Court allowed the creditor to perfect its claim against the estate by filing a formal proof of claim stating that such amendment should be allowed if there was anything in the record of the bankruptcy proceedings prior to the statutory cut-off period for filing claims that is sufficient to show the existence, nature and amount of a claim, such claim may be amended after the expiration of the statutory period.

The problem here has been brought about by the debtor contending that it filed sched-

**2.** The stipulation and order thereon (E.R. 100) provides as follows:

"IT IS FURTHER STIPULATED AND AGREED that an amount of money equal to the proportionate share of Rite's tax refund that Dresser would have received if it had been allowed to participate under Option B of Class Four of the First Amended Plan of Arrangement be deposited into the above escrow, along with sufficient shares of preferred stock of the reorganized debtor to satisfy the balance of Dresser's claim."

ules which disputed appellant's claim (together with those of all unsecured creditors allegedly because of accounting problems). If the claim were not disputed, appellant would not have been required to file a claim, since it would have been deemed filed by virtue of it being scheduled without indication as to it being disputed, contingent, or unliquidated. 11 U.S.C. § 1111(a). Here appellant not only was listed in the schedule of the ten largest creditors in the specific amount owed it, without any indication of dispute, but served actively on the creditors' committee without forewarning of there being a question as to the amount of its claim. Considering the blanket characterization of all unsecured claims as disputed, there is a genuine question as to whether there was a good faith dispute at all. In any event, the case at bar contains a set of circumstances similar to those found in *Atlas Supply* and would certainly meet the rules set forth in *Fant* and *Sun Basin*, allowing amendment after the deadline for filing claims. Because of the nature of Dresser's involvement in these proceedings and debtor's specific knowledge thereof as discussed, it would be unjust and inequitable to deny its motion to file a formal amended claim and ballot.

## IV. CHOICE OF OPTION

As indicated, it appears that the filing of the subsequent Chapter 7 bankruptcy petition may have rendered the option issue moot although this may not be a foregone conclusion. We therefore briefly turn to this issue.

Dresser contends that its failure to timely file a ballot was due to mistake, inadvertence and excusable neglect. The Bankruptcy Court found that on December 4, 1980, the secretary for the creditors' committee mailed the order setting forth the procedure for filing ballots. This order was received by Dresser on December 12, 1980, and the deadline for filing ballots was December 26, 1980. Apparently, Dresser contends that its failure to forward the ballot to its attorneys prior to December 23, 1980, and the presence of the Christmas holidays

were sufficient grounds for mistake, inadvertence and excusable neglect. The Bankruptcy Court disagreed and found that Dresser showed no basis for its failure to select option B prior to the relevant deadline. We hold that such a finding by the Bankruptcy Court was not clearly erroneous.

The decision of the Bankruptcy Court is Reversed on the issue of the timeliness of Dresser's claim against the debtor's estate, and the decision of the Bankruptcy Court is Affirmed on the issue of choice of options.