In re AMERICAN PROPERTIES, INC., Debtor.

BOARD OF COUNTY COMMISSIONERS OF SALINE COUNTY, KANSAS, Plaintiff,

v.

COLEMAN AMERICAN PROPERTIES, INC., A Kansas Corporation, Defendant.

Bankruptcy No. 80–40156.
Adv. No. 83–0060.

United States Bankruptcy Court, D. Kansas.

May 15, 1983.

240

Constance M. Achterberg, Asst. County Atty. for Saline County, Saline, Kan., for creditor.

R. Pete Smith and Chris W. Henry, McDowell, Rice & Smith, Kansas City, Kan., for debtor.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 11 proceeding, issues of notice and the effect of confirmation are presented.

The issues presented for determination are:

1. Did the debtor's notice comply with the requirements of K.S.A. § 60–304(d) (Supp.1981).

2. Does a tax lien creditor have a claim in bankruptcy.

3. Was notice received by the Board.

4. What notice is required to dispute all claims in chapter 11 and did the debtor comply with these requirements.

5. What was the effect of confirmation for the creditor's claim and lien.

Briefs have been submitted and the Court is ready to rule.

## FINDINGS OF FACT

The debtor, American Properties, Inc., filed its chapter 11 petition for reorganization on March 5, 1980. An Order was signed on August 19, 1980 setting the final date for the filing of claims as September 9, 1980. According to the file, this Order was sent to the Saline County Treasurer (Treasurer), County Court House, Saline, Kansas, 67401. The Order was filed on August 26, 1980 (pleading # 74) and mailed to the Treasurer on August 22, 1980 (pleading # 74) (this Order will be referred to as the August 22 Order). From an examination of the file and the certificates of mailing, this is the first notice sent to a Saline County representative concerning any of the chapter 11 proceedings for this debtor, as borne out by the following chronological facts: The petition was filed March 5, 1980 but the debtor was given until March 12, 1980 to file its initial list of creditors (pleading # 7).

On March 14, 1980 a list of creditors was filed, but the Board was not included (pleading # 9). On March 26, 1980 and March 27, 1980 (pleading # 12) notice to creditors of the § 341 meeting was sent out but Saline County was not notified.

On April 7, 1980 the debtor filed its schedule of debts (pleading # 17). A computer print-out creditor register was included, Saline County Treasurer was listed, but, according to the file, this pleading was never sent to the Board or the Treasurer (see pleading # 18).

Certificates of mailing entered in the Court file between April 7, 1980 and August 22, 1980 indicate the Saline County Board of County Commissioners (Board) never received a pleading, a notice, or any other document.

At a hearing held March 11, 1983 the following evidence was adduced:

All notices and mailings in this case were done by Electronic Processing, Inc. (EPI). R. Pete Smith, an officer and director of EPI testified concerning EPI procedures for mailings. Mr. Smith testified that all creditors listed on EPI's computer printout creditor register (exh. 2C) were mailed notice of the bankruptcy proceeding together with a Proof of Claim form. This mailing occurred on April 7, 1980. The Saline County Treasurer was included on the creditor print-out list. Creditors on the computer register were mailed notice of the bankruptcy proceeding in the numerical sequence in which their claims were assigned in the computer register. Proof of claims were filed on the forms provided to creditors by this mailing by both the Douglas County Treasurer and the Reno County Treasurer. Douglas County was number 45 on the computer register and Reno County was number 37. Saline County was number 43. Thus, creditors preceding and following Saline County on the computer register received the notices mailed on April 7, 1980 and in fact timely filed claims.

Mr. Smith testified that no mail addressed to the Saline County Treasurer was returned.

Mr. Smith testified that in the regular course of EPI's business all mail processed by EPI's computer service was mailed.

Apparently, the Board alleges there is no "county courthouse" in Saline County, but rather a City-County Building. This point was raised at the hearing to assert the address used by the debtor was incorrect, but the argument apparently was abandoned in the Board's brief.

The Board alleges it has "no record of notice having been given to it of the bankruptcy proceedings or the subsequent actions therein."

The debtor's schedules contained in the Court file listed all debts, including the claim of Saline County Treasurer as "unliquidate." The April notice, alleged by the debtor to have been mailed to the Board, did not state that the Board's claim was unliquidated, disputed or contingent. Notice that debts were "unliquidate" or that claims were disputed was not specifically directed to each creditor, and was not specifically directed to the Board until the August 22, 1980 notice was mailed. The August 22, 1980 notice informed the Board that its claim was listed as "disputed" (in fact the Board's claim was listed as "unliquidate," not disputed) and that the Board had until September 9, 1980 to file its claim.

A claim was not filed. To date, a claim has not been filed.

The disclosure statement was approved on December 13, 1981.

The plan was confirmed on March 31, 1982.

### CONCLUSIONS OF LAW

*1. Notice to County Treasurer instead of Board and Proof thereof*

█ The Board asserts that notice was not "legally complete" (memorandum of the Board, pg. 1) because the debtor did not comply with K.S.A. § 60–304(d) (Supp. 1981). Service of process on a Kansas County, however, is accomplished by serving either the Board of County Commissioners or the County Treasurer. K.S.A. § 60–304(d) (Supp.1981). This state requirement is adopted in F.R.Civ.P. 4(d)(6). Sufficiency and proof of service in bankruptcy is governed by Bankruptcy Rules 203, 704(c)(6), 704(f) and 704(g), and notices to the County Treasurer were proper under the Bankruptcy Rules.

*2. Does a tax lien creditor have a claim in bankruptcy*

█ The terms claim, debt, and creditor are federally defined in the Bankruptcy Code and these definitions control.

In bankruptcy, a "creditor" is an "entity that has a *claim* against the debtor that arose at the time of or before the order for relief . . . ." 11 U.S.C. § 101(9). A debt is a "liability on a *claim*." 11 U.S.C. § 101(11). A "claim" is a "right to payment." 11 U.S.C. § 101(4)(A). The "right to payment" is not limited to an in personam right to payment from the debtor, nor is an in rem right to payment from the debtor's property excluded. In chapter 11 cases, Congress contemplated that creditors with non-recourse in rem rights to payment would automatically have recourse in personam against the debtor under 11 U.S.C. § 1111(b)(1). Furthermore, creditors with liens on property such as statutory tax liens, have a secured claim in bankruptcy "to the extent of the value of their interests in the estate's interest in such property . . . ." 11 U.S.C. § 506(a). See also 1 Norton Bankruptcy Law and Practice § 28.23 (1981).

Thus, whether or not a tax authority is a "creditor" owed a debt under state law, the taxing authority is a "creditor" owed a "debt" and has a "claim" in a bankruptcy proceeding. *New York v. New York, N.H. & Hartford R.R.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953).

*3. Notice*

█ When mail is properly addressed, stamped and deposited in the mail system, there is a presumption it was received by

the party to whom it was sent. See, e.g., *Legille v. Dann,* 544 F.2d 1 (D.C.Cir.1976). Proper mailing, however, must be proved before the presumption is activated. Id. *Simpson v. Jefferson Standard Life Ins. Co.,* 465 F.2d 1320 (6th Cir.1972). Proof of custom of mailing is sufficient to carry the burden of proper mailing, see *Simpson v. Jefferson Standard Life Ins. Co.,* 465 F.2d 1320 (6th Cir.1982); *Gulf Coast. Invest. Corp. v. Secretary of Housing and Urban Devel.,* 509 F.Supp. 1321 (E.D.La.1980); *J.I. Case Co. v. Sinning Bros. Motor Co.,* 137 Kan. 581, 21 P.2d 328 (1933), and proof of customary and usual computer procedures is sufficient to show adherence to a usual and customary procedure. *Gulf Coast Invest. Corp. v. Secretary of H.U.D.,* 509 F.Supp. 1321 (E.D.La.1980). The mailing employee need not testify. *J.I. Case Co. v. Sinning Bros. Motor Co.,* 137 Kan. 581, 583, 21 P.2d 328, 330 (1933).

█ If the proper and correct address was not used the presumption cannot be activated. *Illinois Central R.R. v. Ready Mix Concrete, Inc.,* 323 F.Supp. 609 (E.D. La.1971). A higher standard of correctness is required when the addressee is a private entity. See, e.g., *Julian C. Cohen Salvation Corp. v. Eastern Elec. Sales Co.,* 205 Pa.Super. 26, 206 A.2d 331 (1965). Where an address is slightly incorrect, however, most courts appear to hold that the presumption is weakened, but still raised. See, e.g., *Mary Fletcher Hospital v. City of Barre,* 117 Vt. 430, 94 A.2d 226 (1953); *Womack v. United States Fidelity and Guaranty Co.,* 85 Ga.App. 564, 69 S.E.2d 812 (1952). Where an addressee is a well known public entity or business, a more general and less definite address or designation has been required. See, e.g., *Barnet v. Norton,* 90 Vt. 544, 99 A. 238 (1916); *American Surety Co. v. Blake,* 54 Idaho 1, 27 P.2d 972 (1934).

█ Denial of receipt does not, as a matter of law, rebut the presumption, but rather creates a question of fact. See, e.g., *Swink & Co. v. Carroll McEntee & McGinley, Inc.,* 266 Ark. 279, 584 S.W.2d 393 (1979).

█ The Court holds that addressing a notice to the County Treasurer at the County Courthouse instead of the City-County Office Building is only a slight error and a sufficient description to prove the notice was properly addressed. Therefore mailing was proved and the presumption of receipt is raised. The Court further holds that the Board's denial of receipt of the notice did not sufficiently rebut the presumption. The Board did not actually allege non-receipt. Rather, the Board alleged no record of receipt. "Testimony of the addressee that . . . he has no record of the receipt of the letter . . . ," should be regarded with caution. 31A C.J.S. Evidence § 136(e) and 302 (1964). After weighing the evidence, the Court holds the debtor carried its burden of proving the notice of April, 1980 was sent and received by the Board.

### 4. Dispute of Claims

In chapter 11,

A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

11 U.S.C. § 1111(a).

Collier states:

Section 1111(a) serves one single function. It relieves a holder of a claim . . . from having to file a proof of claim . . . in a chapter 11 case provided that (i) the list of creditors . . . referred to in section 521(1) has been filed, and (ii) the particular claim or interest is correctly scheduled and is not scheduled as disputed, contingent, or unliquidated.

5 Collier on Bankruptcy ¶ 1111.01[3] at 1111–5 to –6 (15th Ed.1982).

In *Dresser Indus., Inc. v. Rite Autotronics Corp., (In re Rite Autotronics Corp.),* 27 B.R. 599, 10 B.C.D. 316 (Bkrtcy.App. 9th Cir.1982), the bankruptcy court found the debtor's schedule disputed all claims under 11 U.S.C. § 1111(a). The appellate court held:

where a debtor questions the quality of a claim thereby placing the creditor in a position of potential default and loss, *due process would call for specific notice to the creditor.* Filing of schedules at a place frequently far removed from the location of the creditor, as a practical matter, is not an optimal method for providing the creditor with an opportunity to learn that there is a dispute or question concerning his claim.

27 B.R. 599, 10 B.C.D. at 318 (emphasis added). The appellate Court went on to state:

The problem here has been brought about by the debtor contending that it filed schedules which disputed appellant's claim (together with those of all unsecured creditors allegedly because of accounting problems). If the claim were not disputed, appellant would not have been required to file a claim, since it would have been deemed filed by virtue of it being scheduled without indication as to it being disputed, contingent, or unliquidated. 11 U.S.C. § 1111(a) ....

Id. 27 B.R. 599, 10 B.C.D. at 319.

■ In the instant case, the debtor scheduled all claims as "unliquidate." Specific notice to creditors that debts were "unliquidate," thus requiring that claims *had to be filed* to be allowed under 11 U.S.C. § 1111(a), was not sent by the debtor until August 22, 1980. The Court holds that this notice was mailed and received by the Board. A certificate of service in the file (pleading # 74) indicates this notice was mailed, and for the reasons stated in the discussion of the April, 1980 notice, the Board's assertions of non-receipt are insufficient to rebut the presumption of receipt upon proof of mailing.

■ The Court believes, however, that the August 22, 1980 notice was constitutionally deficient to require the Board to file a claim by September 9, 1980 or have its claim forever barred. A creditor has the right to assume that proper, adequate, and constitutional notice will be provided before its claim is forever barred. *New York v. New York, N.H. & Hartford R.R.,* 344 U.S.

293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953); *In Re Intaco Puerto Rico, Inc.,* 494 F.2d 94, 99 (1st Cir.1974). Certainly constitutional due process requires that notice must be fundamentally fair and reasonably calculated to apprise interested ·parties. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), 4 C. Wright & A. Miller, Federal Practice and Procedure § 1074 at 301 (1969).

■ The Court holds that the notice of the bankruptcy proceeding mailed in April, 1980 was constitutionally insufficient to notify the Board that its claim must be filed. *In Re Rite Autotronics Corp.,* supra. The Court further holds that the August 22, 1980 notice to the Board informing the Board for the first time that its claim was disputed and thus requiring the Board to file a claim was constitutionally insufficient to forever bar the Board's claim after September 9, 1980 because only a short period of time was allowed for claims to be filed. As the Court stated in a previous order involving another County tax creditor:

[I]t is clear that it was not fundamentally fair to require Johnson County to file a proof of claim within 15 days. It is patently clear that the September 9, 1980 filing date should not have applied to claims filed by the Board.

(Order of February 4, 1983 at pg. 6).

■ The Court is faced with a further issue. Although the notice of August 22, 1980 was not constitutionally sufficient to require the Board to file a claim by September 9, 1980, nevertheless it was notice to the Board in some degree that its claim was disputed. The Board never filed a claim. The Court is troubled that the Board, with some knowledge of the proceeding in April, 1980 and with notice that its claim was disputed in August, 1980 nevertheless chose not to participate, enter an appearance or file a claim.

With notice of the chapter 11 proceeding in April, 1980 and specific notice that its

claim was disputed in August, 1980, even though the September 9, 1980 deadline did not apply to its claim, the Board nevertheless had notice that a claim must be filed. The Board failed to file a late claim, failed to request an extension and failed to appear before confirmation some months after it knew a claim was required. Therefore, the Court holds the Board had notice that it had to file a claim and failed to file before confirmation of this plan. The bar date provided by Local Bankr.Rl. 3001(b)(3) as adopted in this District for filing of claims, is the date of approval of the disclosure statement. That date in this case was December 31, 1981, 16 months after this creditor received notice that its claim was disputed.

### 5. Effect of Confirmation

Confirmation of a chapter 11 plan has three effects. First, all creditors are bound by the provisions of a plan whether or not the creditor is impaired and whether or not the creditor files a claim. 11 U.S.C. § 1141(a). Second, all property vests in the debtor, 11 U.S.C. § 1141(b), "free and clear of all claims and interests of creditors ... except as otherwise provided in the plan or in the order confirming the plan." 11 U.S.C. § 1141(c). Third, a nonliquidating corporate debtor is discharged of all debts arising before confirmation, whether or not a proof of claim is filed. 11 U.S.C. § 1141(d). The effect of these provisions are far-reaching. After confirmation of a chapter 11 plan, a creditor's lien rights are only those granted in the confirmed plan. A creditor no longer can enforce its pre-confirmation lien rights; a creditor must seek to enforce its lien rights granted in the plan, rather than its pre-chapter 11 lien rights. See, *In Re Stratton Group, Ltd.,* 12 B.R. 471 (Bkrtcy.S.D.N.Y.1981); 5 Collier on Bankruptcy ¶ 1141.01[3] at 1141–8 (15th Ed.1982); Hopper, Confirmation of a Plan Under Chapter 11 of the Bankruptcy Code and the Effect of Confirmation on Creditors' Rights, 15 Ind.L.Rev. 501, 521–22 (1982); Kennedy, Secured Creditors Under the Bankruptcy Reform Act, 15 Ind.L.Rev. 477, 498 (1982).

This follows the practice under the Act where:

confirmation of a plan has the effect of a judgment in rem fixing the rights of the debtor and the other party in such a way that the other party is not entitled to have the contract reformed ....

11 Remington on Bankruptcy, § 4646 (1961). *In Re International Plastics, Inc.,* Case No. 82–6023 at 7–8 (D.Kan. Apr. 29, 1983) (Kelly, J.). A confirmed plan is binding on all parties "and must be enforced as written." *Denver & Rio Grande W.R.R. v. Goldman, Sachs & Co.,* 212 F.2d 627, 630 (10th Cir.1954). "[A]ll questions which could have been raised pertaining to such plan are res judicata." 5 Collier on Bankruptcy ¶ 1141.01[a] at 1141–5 (15th Ed. 1982).

The case of *Garnett State Savings Bank v. Tush,* 232 Kan. 447, 657 P.2d 508 (1983) has no applicability to the case at bar. *Garnett* involved an individual's discharge under Chapter VII of the Act. It in no way holds liens are enforceable under the Code after discharge under 11 U.S.C. § 524 in the same manner as they were enforceable under § 14 f of the Act. See *In Re David Jay Ray,* 26 B.R. 534, 10 B.C.D. 19 (Bkrtcy.D.Kan.1983). Furthermore, discharge under chapter VII of the Act never controlled the effect of confirmation under Chapters X, XI or XII of the Act.

Finally, 11 U.S.C. § 1141(d)(2) does not except § 523(a)(1) tax debts from the corporate chapter 11 debtor's discharge. Section 1141(d)(2) states:

The confirmation of a plan does not discharge an *individual* debtor from any discharge under section 523 of this title.

11 U.S.C. § 1141(d)(2). An "individual" is not a corporation under the Code. See 11 U.S.C. § 101(30). Furthermore, § 523 itself is only applicable to individuals and not corporations.

In short, the Board had notice of this chapter 11 proceeding, failed to file a claim and failed to object to confirmation. After confirmation the Board is bound by

the terms of the confirmed plan. The Board is barred by the doctrine of res judicata from raising any arguments concerning the propriety of the debtor's strategy to dispute all claims under 11 U.S.C. § 1111(a), and is barred under the confirmed plan from enforcing its pre-confirmation tax lien. The only remaining rights of the Board are those rights granted under the terms of the confirmed plan, and the right to collect and enforce collection of tax obligations accruing after the debtor's chapter 11 petition was filed. 11 U.S.C. § 362(c)(2)(C).

Relief requested by the Board to file a claim or enforce its lien is accordingly denied.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.