**In the Matter of SIEGLER BOTTLING CO., Debtor.**

**Bankruptcy No. 3–84–02213.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 2, 1986.

John T. Ducker, Dayton, Ohio, for Debtor-in-Possession, Talbot & Ducker.

Joel Shapiro, Dayton, Ohio, for Committee of Unsecured Creditors, Goldman, Rubin & Shapiro.

William A. Rogers, Jr., John P. Petzold, Dayton, Ohio, James R. Shenk, Sidney, Ohio, Hugh E. Wall, Harry G. Ebeling, Timothy G. Rice, Dayton Power and Light Co., Gordon I. Gendler, and Ronald S. Pretekin, Dayton, Ohio, for creditors.

## DECISION REQUIRING SPECIFIC NOTICE

THOMAS F. WALDRON, Bankruptcy Judge.

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). The matter of listed unsecured creditors not receiving specific notice that their claims were scheduled as either disputed, contingent, or unliquidated, thereby requiring them to timely file proofs of claim, came to the court's attention during the course of an examination and hearing on August 26, 1986, in connection with the approval of a disclosure statement that proposed a liquidation plan and the various objections and responses to the "Debtor in Possession's Report on Allowance or Disallowance of Claims" (Doc. 104).

On October 9, 1984, Siegler Bottling Company (hereinafter Siegler), a corporation that was operating at the time, filed a voluntary petition under Chapter 11 of the Bankruptcy Code. At that time, Siegler's Treasurer submitted a list of creditors, accompanied by a letter stating that the list did "not reflect whether the creditors' claims are contingent, disputed and/or liquidated. Debtor reserves the right to make its determination at a later date." (Doc. 2). On October 25, 1984, an "Order For Meeting Of Creditors, Combined With Notice Thereof And Of Automatic Stay" was sent by the court to all creditors on Siegler's list. The order provided that:

CREDITORS WHOSE CLAIM IS NOT LISTED OR WHOSE CLAIM IS LISTED AS DISPUTED, CONTINGENT, OR UNLIQUIDATED AS TO AMOUNT AND WHO DESIRE TO PARTICIPATE IN THE CASE OR TO SHARE IN ANY DISTRIBUTION, MUST FILE THEIR PROOFS OF CLAIM ON OR BEFORE FEBRUARY 13, 1985, EXCEPT AS OTHERWISE PROVIDED BY LAW OR A DIFFERENT TIME IS LATER SET BY THE COURT.

The order further stated that: "YOUR CLAIM IS SCHEDULED AS," but how each creditor was scheduled was left blank. The reverse of the order contained a Proof of Claim form to be completed and filed by creditors whose claims should have been identified on the front as either disputed, contingent, or unliquidated. On October 29, 1984, Siegler filed its Statement of Financial Affairs For Debtor Engaged In Business and Schedules of Assets and Liabilities. Schedule A–3—Creditors Having Unsecured Claims Without Priority—contained the statement that "[a]ll claims are either contingent, unliquidated or disputed." Siegler supplied the information referred to in its letter of October 9, 1984, by listing every claim as disputed, contingent or unliquidated. It never specifically identified which classification or classifications—disputed, contingent, or unliquidated—applied to each particular claim.

Bankruptcy Rule 3003 provides that in a Chapter 11 case the schedules "constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated." Bankr.R. 3003(b)(1). A Proof of Claim is not required unless a creditor's claim is not scheduled or is scheduled as disputed, contingent, or unliq-

uidated. A creditor who is required to file a claim and who does not do so within the prescribed time limit "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Bankr.R. 3003(c)(2). The effect of the debtor-in-possession's classification was to completely reverse the method contemplated by the Bankruptcy Code to confer voting and distribution opportunities to unsecured creditors.

Based on the proofs of claim that were filed in response to the initial order setting the meeting of creditors, Siegler proceeded to classify the claims as allowable or not (*e.g.*, objectionable as to amount, as duplicative, as unsubstantiated, *etc.*) in a report of allowance or disallowance of claims (Doc. 104). Although it was not clear from the report as filed, it became clear during the hearing that following the hearing an order was to be entered providing that all parties who had not filed a Proof of Claim (and thus whose claims did not appear as specifically allowed or disallowed in the report), would be barred from any voting or distribution in connection with this case. While specific evidence was not presented concerning the exact number of, or amount due to, these claimants, the information presented indicated that approximately one hundred and sixty-one (161) unsecured creditors listed in the schedules with claims approximating two hundred thousand dollars ($200,000) had not specifically been put on notice that if they did not timely file a Proof of Claim, their claim would thereafter be barred for distribution and voting purposes.

■ While the Bankruptcy Rules contain provisions generally authorizing the court to limit the notices to be sent to certain claimants (Bankr.R. 2002(*l*)—Orders Designating Matter of Notices) and specifically authorizing the court to limit such notices in Chapter 11 cases (Bankr.R. 2002(i)—Notices to Committees), any such limiting of notices is always subject to the continuing constitutional concept of fundamental fairness embodied in the due process clause of the fifth amendment to the United States Constitution which guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law."

In a bankruptcy context, the United States Supreme Court has said that due process requires "that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights." *New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). In that case, creditors did not receive actual, personal notice of the prescribed date for filing their proofs of claim, but were given constructive notice via publication in five New York City newspapers. Nevertheless, even where it was argued that creditors were aware of a debtor's filing, and thus had a duty to inquire further about orders limiting their time to file claims, the Court found that "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." *Id.* at 297, 73 S.Ct. at 301. *Accord Bratton v. Yoder Company (In re Yoder Company )*, 758 F.2d 1114, 1116 (6th Cir.1985); *Reliable Electric Company, Inc. v. Olson Construction Company*, 726 F.2d 620, 623 (10th Cir.1984).

■ In fashioning a funnel for limiting claims, which is a desirable and often necessary part of a Chapter 11 case, great care must be taken to insure that it is widest at the initial stages of a bankruptcy proceeding to be certain that all parties are afforded adequate notice of their opportunity to participate in the proceedings. It is not sufficient to recite that a subsequent stream of miscellaneous papers has been poured past a party by the court, the debtor-in-possession, or others, if the record does not establish that a particular claimant can be clearly identified as a party initially encompassed and therefore subsequently subject to all applicable procedures necessary to reduce those initial claimants to the ones who will ultimately emerge from the narrow opening at the final por-

tion of the claims funnel as allowed claimants.

Thus, in situations, such as the one presently before the court, where creditors were scheduled by the debtor on the original notice, but were not made aware of the prejudicial designation of their claims as disputed, contingent, or unliquidated, and as a result failed to file the required Proof of Claim, courts have found the original notice defective, and have ordered a renoticing of such creditors, specifically mandating that in the notice each creditor's claim be categorized as either disputed, contingent, or unliquidated, and have allowed additional time for these creditors to file a Proof of Claim. *Dresser Industries, Inc. v. Rite Autotronics Corporation (In re Rite Autotronics Corporation )*, 27 B.R. 599, 10 B.C.D. 316, 318–19 (9th Cir.Bankr. App.Panel 1982); *Board of County Commissioners of Saline County, Kansas v. Coleman American Properties, Inc. (In re American Properties, Inc.)*, 30 B.R. 239, 10 B.C.D. 879, 882 (Bankr.D.Kan.1983); Bankr.R. 3003(c)(3). The court in *In re Middle Plantation of Williamsburg, Inc.*, 36 B.R. 873 (Bankr.E.D.Va.1984), even went so far as to say that:

To the extent Rule 3003 fails to mandate notice that would meet the requirements of due process relative to creditors with disputed, contingent or unliquidated claims in Chapter 9 Municipality or Chapter 11 reorganization cases, it is unconstitutional.

*Id.* at 876.

█ While it is not necessary for this court to reach such a conclusion concerning Bankr.R. 3003, it is necessary for the court to direct that specific notice of their classification be given to creditors who have not otherwise filed a Proof of Claim in this case providing them with sufficient time in which to file their claims. That such noticing at this point will occasion delay in the plan's proposed confirmation and distribution is undeniable but is nevertheless demanded in these circumstances. Neither distribution nor confirmation can be accomplished in a debtor's plan at the expense of parties who have not been afforded the notice demanded by due process. The court will defer setting a hearing on confirmation of the proposed plan until the time set herein for filing proofs of claim has passed, since the filing of the Proof of Claim also establishes the claimant's right to vote on confirmation of any proposed plan.

Counsel for the unsecured creditors' committee expressed concern about the effect that proofs of claims filed in response to the notice ordered herein could have on the final distribution to the filed unsecured claims that have been allowed at this time and indicated possible objection to the noticing procedure ordered herein and any proofs of claim that would be filed as a result. It would be premature for the court to respond to this concern since no proofs of claim may actually be filed which would alter the final distribution on the presently filed allowed unsecured claims; however, the court does recognize that committee members and their counsel must be models of integrity not given to inconsistent conduct. As one court noted:

[T]he individuals constituting a committee should be honest, loyal, trustworthy and without conflicting interests, and with undivided loyalty and allegiance to their constituents. *See In re Realty Associates Securities Corp.*, 61 F.Supp. 574 (E.D.N.Y.1945). Conflicts of interest on the part of representative persons or committees are thus not be tolerated. *See Woods* [*v. City Nat. Bank & Trust Co. of Chicago*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941) ], *supra; American United Mutual Life Insurance Co. v. City of Avon Park*, 311 U.S. 138, 61 S.Ct. 157, 85 L.Ed. 91 (1940). Thus, where a committee representative or agent seeks to represent or advance the interest of an individual member of a competing class of creditors or various interests or groups whose purposes and desires are dissimilar, this fiduciary is in breach of his duty of loyal and disinterested service. *See id; In re Penn-Dixie*, 9 B.R. 941 (Bkrtcy.S.D.N.Y.1981). *See*

also *In re Realty Associates Securities Corp.,* 56 F.Supp. 1008 (E.D.N.Y.1944).

*Johns-Manville Sales Corporation v. Doan (In re Johns-Manville Corporation),* 26 B.R. 919, 925 (Bankr.S.D.N.Y.1983).

Accordingly, if the unsecured creditors' committee or their counsel believe this decision creates a conflict of interest or impinges on the integrity required of them, they are invited to set such concerns in a procedural posture that would most easily clarify the present status of the case and prevent future confusion in the event that some or all of the parties entitled to file proofs of claim as a result of this decision and order do so.

The court finds that the failure to provide specific notice to creditors whose claims were listed as disputed, contingent, or unliquidated constitutes a failure to provide reasonable notice as required by the due process clause of the fifth amendment and constitutes cause under Bankr.R. 3003(c)(3) for this court to order that specific notice of their classification be provided to such creditors and to extend the time for filing of proofs of claim by those creditors. Although the issue of specific notice is mooted in regard to creditors who have already filed proofs of claim, to those remaining creditors who have not filed a Proof of Claim, specific notice of their right to file one must be given.

The court HEREBY ORDERS that within fourteen (14) days from the date of entry of this ORDER, the debtor-in-possession shall mail to all creditors who have not previously filed a Proof of Claim, a blank Proof of Claim and a notice that states whether the creditor's claim is either a disputed claim, a contingent claim, an unliquidated claim, or more than one of these classifications and that unless a completed Proof of Claim is filed within sixty (60) days from the date of mailing that appears on the notice, the creditor will not receive any distribution from the assets available in this case and will not be allowed to vote on the confirmation of any plan proposed in this case.